William A. Smelko (Bar No. 96970)
E-mail:    bill.smelko@procopio.com
Janine W. Parchment (Bar No. 352004)
E-mail:    janine.parchment@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiff SHAHRAM ELIHU, an
individual d/b/a BLUE PACIFIC ENGINEERING
CONSTRUCTION, INC.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRAM ELIHU, an individual d/b/a BLUE PACIFIC ENGINEERING & CONSTRUCTION, INC. | Case No. **'24 CV 1594 RBM JLB** |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §701 ET SEQ.** |
| v. | |
| UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, solely in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | |
| Defendants. | |

Plaintiff, SHAHRAM ELIHU, an individual d/b/a BLUE PACIFIC ENGINEERING CONSTRUCTION, INC. ("Plaintiff"), brings this action against Defendants, UNITED STATES SMALL BUSINESS ADMINISTRATION ("SBA"), and ISABELLA CASILLAS GUZMAN, solely in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA ("Defendants").

Plaintiff alleges as follows:

**INTRODUCTION**

1.      This action arises under the Administrative Procedure Act ("APA") for judicial review of a Small Business Administration's ("SBA") final decision of Plaintiff's Paycheck Protection Plan ("PPP")[1] Borrower Application Form. This proceeding was necessitated by the unjust, arbitrary, and capricious actions of the SBA, which deprived Plaintiff of a fair opportunity for PPP loan forgiveness as a direct result of the fraudulent actions of a third party.

2.      Plaintiff has exhausted all administrative remedies available to Plaintiff.

**JURISDICTION AND VENUE**

3.      Jurisdiction over this action is proper pursuant to 28 U.S.C. §1331, because this is a civil action arising out of the laws of the United States.

4.      Plaintiff has standing to seek review in this District Court of the SBA's Final Decision pursuant to 5 U.S.C. §704.

5.      Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1391 because this is the judicial district of Plaintiff primary place of business, where a substantial part of the events or omissions giving rise to the claim occurred, and because the defendants named herein are officers or employees of the United States.

**PARTIES**

6.      At all times relevant, SHAHRAM ELIHU, an individual, d/b/a Blue Pacific Engineering and Construction, was acting as a sole proprietorship dedicated to providing construction and engineering services in the State of California, including in the City and County of San Diego.

7.      Defendant, United States Small Business Administration ("SBA"), is an independent federal agency created and authorized pursuant to 15 U.S.C. §633 *et seq.*

---

[1] The references are to: Coronavirus Aid, Relief and Economic Security Act (the "CARES Act"); the Paycheck Protection Program ("PPP"), enacted in §1102 of the CARES Act; §7(a) of the Small Business Act (15 U.S.C.§636(a)).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. _____

8.     Defendant, Isabella Casillas Guzman, is the Administrator of the SBA, and is sued solely in her official capacity as the acting Administrator.

9.     Defendant, Janet Yellen, is the Secretary of the United States Department of Treasury, and is sued solely in her official capacity as the Secretary of the Treasury.

10.     Defendant, United States of America, is a proper defendant under the Agency Protection Act ("APA") pursuant to 5 U.S.C. §702.

11.     This action is for non-monetary relief on a claim that the Federal Defendants acted or failed to act in an official capacity or under color of legal authority. Therefore, the Federal Defendants have waived any claims of sovereign immunity. *See*, 5 U.S.C. §702; *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (recognizing that the APA provides "an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs which governmental agencies are accountable"); *Clinton v. Babbitt*, 180 F.3d 1081, 1087 (9th Cir. 1999) (stating that the APA "expressly waived sovereign immunity in non-statutory review actions for nonmonetary relief brought under 28 U.S.C. §1331").

## BACKGROUND

### A.     CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT AND PAYCHECK PROTECTION PROGRAM

12.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and the Coronavirus Response and Consolidated Appropriations Act (2021) were created to "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2] The CARES Act was passed by Congress on March 25, 2020 and signed into law on March 27, 2020.[3]

---

[2] U.S. Department of the Treasury, About the Cares Act and Consolidated Appropriation Act, https://home.treasury.gov/policy-issues/coronavirus/about-the-cares-act (last visited September 6, 2024).
[3] *Id.*

13.    The Paycheck Protection Program ("PPP") was established by the CARES Act and implemented by the Small Business Administration with support from the Department of the Treasury. 15 U.S.C. §636(a). The program was formed to provide forgivable loans to small businesses for applicable overhead such as payroll, rent, and utilities. 15 U.S.C. §636(a).

14.    The PPP loans were made available in two phases. The first phase, referred to as the First Draw PPP ("First Draw") loan, began in April 2020. The second phase, known as the Second Draw PPP ("Second Draw") loan, was established under the Economic Aid Act and became available on January 13, 2021. The Second Draw loan is what is at issue in this Complaint.

15.    An organization was eligible for a First Draw loan if the organization was a small business concern, as defined by Small Business Act 15 U.S.C. §632 and had 500 or fewer employees whose principal place of residence was in the United States. 15 U.S.C. §636 (a)(36)(D)(i). The organization must have been in operation on February 15, 2020, and either had employees for whom they were paid salaries and payroll taxes or paid independent contractors. *Id.* Parties, like Plaintiff, here, are also eligible for a First Draw loan if they are an individual who operates under a sole proprietorship. 15 U.S.C. §636 (a)(36)(D)(ii).

16.    The CARES Act provides that "[a]n eligible entity shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred or expenditures." 15 U.S.C. §636 (a)(36)(J)(ii). Additionally, the Fact Sheet, located on the website of the Treasury, states that ***"[a]ll loan terms will be the same for everyone.*** The loan amounts will be forgiven as long as" certain qualifications are met.[4]

17.    Each eligible borrower was limited to one First Draw loan. 15 U.S.C. §636 (a)(36)(F). In fact, a part of the application process requires an applicant to certify

---

[4] U.S. Department of the Treasury, Paycheck Protection Program (PPP) Information Sheet: Borrowers, https://home.treasury.gov/system/files/136/PPP (last visited September 6, 2024).

that "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

18.     The Second Draw loan had a different set of requirements. The borrower must have received a First Draw loan and used the amount as authorized. The limit was 300 employees, and the borrower must be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020." 15 U.S.C. §636 (a)(37)(A)(iv).

19.     To qualify for full forgiveness of the Second Draw loan, borrowers must show that "during the 8- to 24-week covered period following loan disbursement employee and compensation levels are maintained in the same manner as required for the First Draw loan." 60 percent of the loan proceeds must have been spent on payroll costs with the reaming on other eligible expenses.[5] If a borrower meets these qualifications, they are eligible for full forgiveness of the Second Draw loan.

**B.     SBA'S DENIAL OF PLAINTIFF'S SECOND DRAW LOAN FORGIVENESS APPLICATION**

20.     On April 8, 2020, Plaintiff applied for and met the qualifications for a First Draw loan in the amount of $853,000.00. On May 7, 2020, however, the bank updated Plaintiff's loan application for its First Draw loan for a corrected amount of $853,000.00. The First Draw loan was funded on April 27, 2020, and disbursed on May 12, 2020. Attached as **Exhibit "A"** (Plaintiff's First Draw Loan Application).

21.     Plaintiff is informed and believes that, on April 30, 2020, a fraudulent First Draw loan application was not submitted by him but instead was improperly submitted on his behalf and without his knowledge. This loan was funded and disbursed on May 1, 2020.

---

[5] U.S. Department of the Treasury, Paycheck Protection Program Second Draw Loans: Top Line Overview, https://home.treasury.gov/system/files/136/Top-line-Overview-of-Second-Draw-PPP.pdf (last visited September 6, 2024).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO. _____

22.     In November 2020, Shahram Elihu, as an individual, participated in proceedings against his ex-spouse and determined that she fraudulently applied for a First Draw loan using the Plaintiff's credentials. This was the first occasion the Plaintiff was informed of this incident. Once notified of the fraudulent loan and determined that it was disbursed into one of his business accounts, the Plaintiff promptly took steps to return the money. Attached as **Exhibit "B"** (Plaintiff's Declaration of Identify Theft).

23.     On March 24, 2021, Plaintiff applied, and was subsequently approved for, a Second Draw loan in the amount of $920,500.00, which was disbursed on April 8, 2021. Attached as **Exhibit "C"** (Plaintiff's Second Draw Loan Application).

24.     On June 8, 2021, Plaintiff applied for full forgiveness of its Second Draw loan and was subsequently denied. In its denial, SBA cited that the Plaintiff was ineligible to receive the Second Draw loan, because it received two First Draw loans. Furthermore, that in Plaintiff's corrected First Draw loan application, which was completed after the disbursement of the fraudulent loan, Plaintiff certified that "The Applicant has not and will not receive another loan under the Paycheck Protection Program." Attached as **Exhibit "D"** (July 10, 2024, SBA's Office of Hearings and Appeals Reconsidered Initial Decision).

25.     When the Plaintiff made this certification, he was informed and believed that the information provided in the amended First Draw loan application was correct. As provided above, Plaintiff was not made aware of the fraudulent loan application until November of 2020.

26.     Indeed, the lender approved the Second Draw loan, which was not flagged as a repeated submission. Further, SBA failed to prevent the issuing of the fraudulent First Draw loan by flagging it as a duplicate loan and then mistakenly approving Plaintiff's Second Draw loan despite being aware of the fraudulent loan.

27.     In its denial, SBA claims that there is no basis to grant relief to Plaintiff, based on the fact that they returned the fraudulent First Draw loan, with interest. *Id.*

However, the SBA.gov website provides that, "[e]xisting PPP borrowers that did not receive loan forgiveness by December 27, 2020, may: Reapply for a First Draw PPP loan if they previously returned some or all of their First Draw PPP loan funds.[6] This statement on SBA's website demonstrates that if funds for a previous First Draw loan are returned, borrowers are considered to have taken out only one First Draw loan.

28.     Defendants' denial of Plaintiff's Second Draw loan was not in accordance with the law, including the CARES Act and the APA. Plaintiffs are entitled to an order declaring the same.

29.     Plaintiff is entitled to a permanent injunction enjoining Defendants from asserting that Plaintiff received two First Draw loans and falsified its loan application, thereby rendering Plaintiff ineligible for forgiveness.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief)

30.     Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same was set forth in full herein.

31.     An actual and substantial controversy has arisen among the parties regarding the denial of Plaintiff's request for forgiveness of its Second Draw loan application.

32.     The APA authorizes judicial review of federal agency actions pursuant to 5 U.S.C. §702.

33.     The APA provides that the District Court can "hold unlawful and set aside agency action, findings, and conclusions found to be-- arbitrary, capricious, an abuse of discretion" or "otherwise not in accordance with law or unsupported by substantial evidence in a case." 5 U.S.C. §§706 (A), (E).

---

[6] First Draw PPP Loan, Reapplying and Loan Increases, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan (last visited September 6, 2024).

34.    Plaintiff is entitled to a permanent injunction enjoining Defendants from falsely claiming that Plaintiff is ineligible for full forgiveness of Plaintiff's Second Draw loan.

35.    Plaintiff has no other adequate remedies at law or in equity to seek redress for the Defendant's denial of Plaintiff's Second Draw loan.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief)

36.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same was set forth in full herein.

37.    An actual and substantial controversy has arisen among the parties regarding the denial of Plaintiff's Second Draw loan application.

38.    The APA authorizes judicial review of federal agency actions pursuant to 5 U.S.C. §702.

39.    The APA provides that the District Court can "hold unlawful and set aside agency action, findings, and conclusions found to be-- arbitrary, capricious, an abuse of discretion" or "otherwise not in accordance with law or unsupported by substantial evidence in a case." 5 U.S.C. §§706 (A), (E).

40.    Defendants' denial of Plaintiff's forgiveness application, while granting forgiveness to other similarly qualified businesses, is therefore arbitrary and capricious and an abuse of discretion. Plaintiff is entitled to an order declaring the same.

41.    Plaintiff faces a substantial risk of future harm if Defendants' adverse ruling is not redressed. This caused $920,500.00 in U.S. government-secured loans to go unforgiven while Plaintiff is trying to rebuild after enduring a tragic time in America.

42.    Such a declaration is necessary at this time so that the parties may ascertain their rights and obligations, and it is appropriate because it will obviate the need for future legal action between the parties regarding the same subject matter.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

1.     An order declaring Defendants acted in a manner that was arbitrary, capricious, an abuse of discretion, not in accordance with the law, and in violation of the ABA.

2.     An order vacating the U.S. Small Business Administration Office of Hearing and Appeals "Reconsidered Final Decision" issue of July 10, 2024, denying Plaintiff's Second Draw loan forgiveness.

3.     An order declaring that Plaintiff did not make fraudulent claims on its First Draw amended loan application and is thereby eligible for full forgiveness of its Second Draw loan application.

4.     For costs of suit incurred herein;

5.     For attorneys' fees, including expert fees; and,

6.     For such other and further relief as the Court deems just and proper.

DATED: September 6, 2024                    PROCOPIO, CORY, HARGREAVES &
                                                              SAVITCH LLP


                                                By: _/s/ William A. Smelko_
                                                      William A. Smelko
                                                      Janine W. Parchment
                                                      Attorneys for Plaintiff SHAHRAM
                                                      ELIHU, an individual d/b/a BLUE
                                                      PACIFIC ENGINEERING
                                                      CONSTRUCTION, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **EXHIBIT INDEX**

| Exhibit | Description | Page Nos. |
|---------|-------------|-----------|
| A | Plaintiff's First Draw Loan Application | 0001 - 0002 |
| B | Plaintiff's Declaration of Identify Theft | 0003 - 0007 |
| C | Plaintiff's Second Draw Loan Application | 0008 - 0051 |
| D | July 10, 2024, SBA's Office of Hearings and Appeals Reconsidered Initial Decision | 0052 - 0061 |

8587986.1

DocuSign Envelope ID: DCE85438-D553-40B4-9A4E-10D16F7A79B5



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☒ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC ☐ Independent contractor ☐ Eligible self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable |
|---|---|---|

| Business Legal Name | | |
|---|---|---|
| SHAHRAM ELIHU DBA BLUE PACIFIC ENGINEERING & CONSTRUCTION | | |

| Business Address | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| 7330 OPPORTUNITY ROAD SUITE A SAN DIEGO CA 92111 | 841650613 | (619) 956- 1456 |
| | Primary Contact | Email Address |
| | SHAHRAM ELIHU | SELIHU@BLUEPACIFICENG.COM |

| Average Monthly Payroll: | $ 341,200.00 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 853,000.00 | Number of Employees: | 50 |
|---|---|---|---|---|---|

| Purpose of the loan (select more than one): | ☒ Payroll ☐ Lease / Mortgage Interest ☐ Utilities ☐ Other (explain): N/A |
|---|---|

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| SHAHRAM ELIHU | OWNER | 100.00 | 552045873 | 327 EL PEDREGAL DR SOLANA BEACH CA 9208 |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☒ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☒ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☒ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☒ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? | ☐ | ☒ |
| Initial here to confirm your response to question 5 → SE SE | | |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | ☐ | ☒ |
| Initial here to confirm your response to question 6 → SE SE | | |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☒ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☒ |

SBA Form 2483 (04/20)

1

Exhibit A
Page 0001

DocuSign Envelope ID: DCE85438-D553-40B4-9A4E-10D16F7A79B5



**Paycheck Protection Program**
**Borrower Application Form**

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

 The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

 Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

 The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

 The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

 I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

 During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

 I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

 I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

SHAHRAM ELIHU    *SHAHRAM ELIHU*

Signature of Authorized Representative of Applicant          5/7/2020
                                                            Date

SHAHRAM ELIHU                                                OWNER
Print Name                                                   Title

2

SBA Form 2483 (04/20)

Exhibit A
Page 0002



OMB Control Number 3245-0418
Expiration Date: 08/31/2024

# United States Small Business Administration
## Declaration of Identity Theft

Complete this form if you need the U.S. Small Business Administration to review an outstanding loan or grant for identity theft. Before beginning, please note that a hand-written signature is required for this declaration, as well as attachments.

Providing the information on this form is voluntary. However, if you do not provide the information, it may be more difficult to assist you in resolving your identity theft issue. For Identity Theft Declarations pertaining to direct SBA physical and economic injury disaster loans, such as COVID Economic Injury Disaster Loans (EIDL), send the completed form via email to: IDTheftRecords@sba.gov. For Identity Theft Declarations pertaining to Paycheck Protection Program (PPP) loans, send the completed form via email to: PPPidtheftinquiries@sba.gov.

### Section A – Check the box below that applies to the situation you are reporting

☑ I am submitting this Declaration for myself as a sole proprietor/individual or as the authorized representative for a business named Blue Pacific Engineering and Construction.[1]

☐ I am submitting this Declaration on behalf of my minor child (or I am the guardian of the minor child).[2]

☐ The identity theft victim is deceased, and I am submitting this Declaration as the surviving spouse, Court-Appointed Personal Representative, Executor, or Administrator.[3]

☐ The identity theft victim is incapacitated, and I am submitting this Declaration as the Power of Attorney, Court-Appointed Guardian, or Conservator.[4]

### Section B – Representative, Conservator, Parent or Guardian contact information[5]

Representative's Last Name: Elihu                First Name: S hahram
Current Street Mailing Address: 882 5  A er o D8ui  te 20
City: San Diego           State: CA      ZIP Code: 9  123

Telephone Number: 619-7 8-9428            Alternate Telephone Number: _____
Email address: selihu@bluepacificeng.com

### Section C – Name and contact information of Identity Theft Victim

Victim's Last Name: Elihu                First Name: Shahram
Social Security Number (Please provide 9-digit Social Security Number): 552  -05873
Current Street Mailing Address: 12388 Brassica St.
City: San Diego           State: CA      Zip Code: 92129
Telephone Number: 619-788-9428           Alternate Telephone Number: _____
Email address: selihu@bluepacificeng.com

SBA Form 3513 (08-21)

Exhibit B
Page 0003

**Complete if applicable:**

Victim's Business Name: Shahram Elihu dba Blue Pacific Engineering & Construction

Business Owner(s) Name(s): Shahram Elihu

Taxpayer Identification Number (EIN, TIN, or ITIN): 841650 6 3

Business Street Mailing Address: 88 25 Aero Dr., S te 32 0

City: San Diego          State: CA      ZIP Code: 92123

## Section D – Declaration

*Please carefully review the information you have provided in this form. Then review the statement provided below and, if appropriate, sign and date in the fields provided. **Please remember** you must sign this declaration by hand. Electronic signatures will not be accepted. If additional space is needed for any items, please attach additional pages.*

I, Shahram Elihu _____, residing at San Diego, CA _____

hereby declare under penalty of perjury as follows:

**Please check and complete as appropriate:**

[x]  On or about 04/ 30/ 20 , I allege that someone used my personal identifying information
(PII) or the identifying information of my business without my permission or knowledge
to obtain a loan(s) in my name from the U.S. Small Business Administration or from a
PPP Lender. Please include any known information about the loan (the loan or
application number(s), amount(s) or any other details).

SBA Loan Number 5649057300 in the amount of $84,508.00.  Disbursed on 04/ 30/ 20 from Cross River Bank.

Loan was repaid on 12/8/ 20

Loan was requested by my ex-wife Shiva Moradfar

[x]  State how you became aware that your identity was used to obtain this/these loan(s):

My ex-wife accused me of stealing her PPP loan during a support hearing in November 2 023.  This was the first

time I became aware of who requested this second first draw loan.  She had all my personal and business information to make this

fraudulent attempt, except my monthly payroll, which was off by a factor of 10.  Fortunately, the loan was disbursed to

my business, Blue Pacific Engineering & Construction, so I was able to return the funds to Cross River Bank.

[x]  I hereby confirm that the loan was not requested by me (or my business) nor did I
authorize anyone to submit an application for me (or my business).

[x]  I hereby confirm that none of the proceeds of the loan were used by me (or my business)
or for my benefit or any other purpose that could benefit me (or my business).

[ ]  Are you aware of any other uses of your identity to borrow any other money, including
obtaining credit cards, or to file state or federal income tax returns, if so please describe:

_____

_____

SBA Form 3513 (08-21)

☐   **You are required to attach and send with this form an official copy of a police report or an official report filed with a Federal law enforcement agency such as the FTC, FBI or United States Secret Service regarding this matter.**

☒   **You are required to attach and send with this form a copy of a valid driver license, U.S. Passport, U.S. Military ID, or other valid ID issued by a state or federal agency.**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the information provided in this Declaration is based on my personal information and is true and correct.

05/23/24

_____
Date

_____
Signature of Declarant

### PRIVACY ACT (5 U.S.C. § 552a)

The information provided in this form is protected by the Privacy Act, 5 U.S.C 552a, which prohibits the federal government from disclosing personal information about an individual without the individual's consent. The Privacy Act authorizes SBA to make certain routine uses of information protected by the Act as set forth in its System of Records Notices, 69 F.R. 58598. This form or the information provided in this form may be made available to federal, state, and/or local law enforcement agencies charged with responsibility for or otherwise involved in investigation, prosecution, enforcement or prevention of such violations of law.

Under the provisions of the Privacy Act, you are not required to provide social security numbers. However, if you do not provide the information, it may be more difficult to assist you in resolving your identity theft issue. Note: Any person concerned with the collection, use and disclosure of information, under the Privacy Act may contact the Chief, FOI/ PA Office, 409 3rd Street, SW, Suite 5900, Washington, DC 20416 or by e-mail at foia@sba.gov for information about the Agency's procedures relating to the Privacy Act and the Freedom of Information Act.

PLEASE NOTE: According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 15 minutes. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503. **PLEASE DO NOT SEND THE FORM TO THESE ADDRESSES.**

SBA Form 3513 (08-21)

---

[1] If you are submitting this form for your business, by checking this box and signing the Declaration, you are indicating that you are an authorized representative of the business or the legal owner of the business.

[2] By checking this box and signing the Declaration, you are indicating that you are an authorized representative (as a parent, guardian, or legal guardian) to submit and sign on the minor's behalf.

[3] By checking this box and signing the Declaration, you are indicating that you are the surviving spouse, the Court-Appointed or personal representative, Executor, or Administrator and that you are authorized to submit and sign the Declaration.

[4] By checking this box and signing the Declaration, you are indicating that you have a Power of Attorney or are the Court-Appointed Guardian, or Conservator and that you are the authorized to submit and sign the Declaration.

[5] Complete if someone other than the Identity Theft Victim is submitting the Declaration.

[6] WARNING: In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil □ □ penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

SBA Form 3513 (08-21)



# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**SHAHRAM ELIHU d/b/a**
**BLUE PACIFIC ENGINEERING & CONSTRUCTION**

    **APPELLANT**

Appealed from:

SBA PPP Loan Number 8685148703

Issued: July 10, 2024

Docket No. PPP-8685148703

## RECONSIDERED INITIAL DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

**SBA PPP Loan Number:** 8685148703

**Approved Loan Amount:** $920,500.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 549-551)[1, 2, 3].

SBA issued a final loan review decision denying the application after determining Appellant was ineligible for a Second Draw PPP loan because it[4] received two (2) First Draw PPP loans (AR, Pages 18-19).

Appellant filed an appeal petition.

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision, **except Appellant's petition for reconsideration (PFR)**, are contained in the **case record** maintained in the **OHA __Case Portal__** for Appellant's **original appeal filed on April 22, 2024.**

[2] **The PFR** is contained in the **case record** maintained in the **OHA __Case Portal__** for Appellant's **reconsideration request/appeal filed on July 3, 2024.**

[3] A copy of **this decision will be filed in both case records** maintained in the OHA __Case Portal__.

[4] For purposes of this decision, the pronouns used for Appellant are for the d/b/a entity of *Blue Pacific Engineering & Construction*.

Exhibit C
Page 0008

Docket No. PPP-8685148703

The **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting deadlines for the administrative record, Appellant objections to the administrative record, SBA appeal response, and record closing.

SBA filed the administrative record.

Appellant filed objections.

SBA did not file a response.

The record closed **June 17, 2024**.

OHA issued an initial decision affirming the final SBA loan review decision.

Appellant filed a **petition for reconsideration (PFR)[5]**.

### ISSUE(S)

Does the PFR clearly show an error of fact or law material to OHA's initial decision?

### APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[6], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #4 (*Federal Register*, Vol. 85, No. 82, Pages 23450-23452) (effective April 28, 2020), IRF #9 (*Federal Register*, Vol. 85, No. 97, Pages 29845-29847) (effective May 19, 2020), IRF #13 (*Federal Register*, Vol. 85, No. 101, Pages 31357-31359) (effective May 26, 2020), IFR #26 (*Federal Register*, Vol. 86, No. 9, Pages 3692-3712) (effective January 12, 2021), IFR #27 (*Federal Register*, Vol. 86, No. 9, Pages 3712-3723) (effective January 12, 2021), and IFR #28 (*Federal Register*, Vol. 86, No. 23, Pages 8283-8299) (effective February 3, 2021) contain the controlling regulations; *Paycheck Protection Program Loans Frequently Asked Questions (FAQs)* (PPP-FAQs) (effective May 5, 2020, May 13, 2020)[7] contain applicable policy.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36)**).

---

[5] **SBA did not file a reconsideration request.**

[6] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq*.**

[7] **This guidance is available from SBA's website** at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

Docket No. PPP-8685148703

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m**)[8, 9, 10, 11].

It is the declared policy of Congress that the Federal Government, through the Administrator of SBA, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis (15 USC §636(a)).

For **First Draw PPP** loans, **covered loan** means a loan made under the paragraph 36 (i.e., Paycheck Protection Program (PPP) (15 USC §636(a)(36)) during the covered period (15 USC §636(a)(36)(A)(ii)).

**An eligible recipient of a First Draw PPP loan must certify** it does not have an application pending for a First Draw PPP loan for the same purpose and duplicative amount applied for or received under a First Draw PPP loan (15 UCC §636(a)(36)(G)(i)(III)).

For **Second Draw PPP** loans, **covered loan** means a loan made under paragraph 37 (15 USC §636(a)(37)) (15 USC §636(a)(37)(A)(ii)).

---

[8] The CARES Act initially authorized lending under the PPP for **February 15, 2020 – June 30, 2020** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted March 27, 2020).

[9] The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the **Economic Aid Act**) (P. L. 116-260) reauthorized lending under the PPP (15 USC §636(a)(36) through **March 31, 2021** (P. L. 116-260, Section 323) (enacted December 27, 2020).

[10] The Economic Aid Act also authorizes Second Draw PPP loans under 15 USC §636(a)(37) (P. L. 116-260, Section 311).

[11] The CARES Act was amended to authorize lending for First Draw and Second Draw PPP loans for **February 15, 2020 – June 30, 2021** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted December 10, 2021)).

Exhibit C
Page 0010

**(I) Eligible entity** means any business concern, nonprofit organization, housing cooperative, veterans organization, Tribal business concern, eligible self-employed individual, sole proprietor, independent contractor, or small agricultural cooperative that –

(aa) employs not more than 300 employees; and

(bb)

(AA) except as provided in subitems (BB), (CC), and (DD), had gross receipts during the first (1st), second (2nd), third (3rd), or, only with respect to an application submitted on or after January 1, 2021, fourth (4th) quarter in 2020 that demonstrates not less than a 25 percent reduction from the gross receipts of the entity during the same quarter in 2019;

(BB) if the entity was not in business during the 1st or 2nd quarter of 2019, but was in business during the 3rd and 4th quarter of 2019, had gross receipts during the 1st, 2nd, 3rd, or, only with respect to an application submitted on or after January 1, 2021, 4th quarter of 2020 that demonstrates not less than 25 percent reduction from the gross receipts of the entity during the 3rd or 4th quarter of 2019;

(CC) if the entity was not in business during the 1st, 2nd, or 3rd quarter of 2019, but was in business during the 4th quarter of 2019, had gross receipts during the 1st, 2nd, 3rd, or, only with respect to an application submitted on or after January 1, 2021, 4th quarter of 2020 that demonstrate not less than a 25 percent reduction from the gross receipts of the entity during the 4th quarter of 2019; or

(DD) if the entity was not in business during 2019, but was in operation on February 15, 2020, had gross receipts during the 2nd, 3rd, or, only with respect to an application submitted on or after January 1, 2021, 4th quarter of 2020 that demonstrate not less than 25 percent reduction from the gross receipts of the entity during the 1st quarter of 2020;

**(II) includes a business concern or organization made eligible for a loan** under 15 USC §36(a)(36)(D)(iii)(II) [**news organizations**], (III) [**nonprofit organization**], or (IV) [**internet publishing organizations**] or 15 USC §36(a)(36)(D)(iv), (IV)(aa) [**broadcast business concern** with North American Industry Classification (**NAICS**) code beginning with **511110** or **5151** or 15 USC §36(a)(36)(D)(iv), (IV)(bb) [**nonprofit organization** with NAICS code beginning with **5151**] or 15 USC §36(a)(36)(D)(iv)(V) [**internet-only news or periodical publisher** that was not eligible to receive a covered loan the day before **March 11, 2021**, with NAICS code of **51930**] or 15 USC §36(a)(36)(D)(vii) [**certain 501(c)(6) organizations**] or 15 USC §36(a)(36)(D)(ix) [**additional covered nonprofit entity**] and that meets the requirements described **15 USC §636(a)(37)(A)(iv)(I)(aa) and (bb)**[12, 13, 14].

---

[12] The **small business size standards of the North American Industry Classification System (NAICS) used by SBA** are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.20l.

[13] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

[14] **A searchable NAICS website** is maintained by the U.S. Census Bureau at https://www.census.gov/naics/?99967.

Docket No. PPP-8685148703

(III) **does not include—**

    (aa) any business concern described in **13 CFR §120.110** (or any successor regulation or guidance issued by the Administrator), other than business described in 13 CFR §120.110(a) or (k); or

    (bb) any business concern or entity primarily engaged in political or lobbying activities; or

    (cc) any business concern or entity –

        (AA) created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, has significant operations in China or Hong Kong; or

        (BB) that retains a board member that is a resident of China;

    (dd) any person required to submit a registration statement under 22 USC §612; or

    (ee) an eligible person or entity that receives a grant under 15 USC §9009a (15 USC §636(a)(37)(A)(iv)(I)-(III)).

**Except as otherwise provided in 15 USC §636(a)(37),** the Administrator may guarantee covered loans to eligible entities under the same terms, conditions, and processes as a loan made under 15 USC §636(a)(36) (15 USC §636(a)(37)(B)).

**Maximum loan amount –**

    (i)     In general – the maximum covered loan amount made to an eligible entity is the lesser of—

        (I)     The product obtained by multiplying

        (aa) at the election of the eligible entity, the average total monthly payment for payroll costs incurred or paid by the entity during—

            (AA) the 1-year period before the date on which the loan is made; or

            (BB) calendar year 2019; by

        (bb) 2.5; or

        (II)     $2,000,000 (15 USC §636(a)(37)(C)(i)(I)-(II)).

An eligible entity may **only receive one (1) Second Draw PPP loan** (15 USC §636(a)(37)(F)).

Docket No. PPP-8685148703

**Loan forgiveness –**

(i)     **Covered period** has the meaning given the term in **15 USC §636m(a))**.

(ii)    **Forgiveness generally –** Except as otherwise provided in this subparagraph (15 USC §636(a)(37)(J)), an eligible entity shall be eligible for forgiveness of a covered loan in the same manner with respect to a loan under 15 USC §636(a)(36), as described in 15 USC §636(m)).

(iii)   **Forgiveness amount –** An eligible entity shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal of the sum of the following costs or expenditures made during the covered period:

  (I)     Payroll costs, excluding payroll costs listed in 15 USC §636(a)(37)(J)(iii)(I)(aa)-(cc).
  (II)    Any payment of interest on any covered mortgage obligation.
  (III)   Any covered operations expenditure.
  (IV)    Any covered property damage cost.
  (V)     Any payment on any covered rent obligation.
  (VI)    Any covered utility payment.
  (VII)   Any covered supplier cost.
  (VIII)  Any covered worker protection expenditure.

(iv)    **Limitation on forgiveness for all eligible entities –** Subject to any reductions under **15 USC §636(m)(d)**, the forgiveness amount shall be equal to the lesser of –

  (I)     The amount described in **15 USC §636(a)(37)(J)(ii)**; and
  (II)    the amount equal to the quotient obtained by dividing –

          (aa) the amount of the covered loan used for payroll costs during the covered period; and

          (bb) 0.60

(v)     Submission of material for forgiveness – For purposes of applying **15 USC §636(m)(I)(1)** to a covered loan of not more than $150,000, an eligible entity may be required to provide, at the time of the application for forgiveness, documentation required to substantiate revenue loss in accordance with 15 USC §636(a)(37)(I) (15 USC §636(a)(37)(J)(i)-(v)).

**A Second Draw PPP loan may only be made to an eligible entity that ---**

(i)     has received a First Draw PPP loan; and

(ii)    on or before the expected dated on which the Second Draw PPP loan is disbursed, has used, or will use, the full amount of the First Draw PPP (15 USC §636(a)(37)(O)(i)-(ii)).

Exhibit C
Page 0013

Docket No. PPP-8685148703

**Payroll costs –**

**(I)    means-**

(aa) the sum of payments of any compensation with respect to employees that is a-

(AA) salary, wage, commission, or similar compensation;

(BB) payment of cash tip or equivalent;

(CC) payment for vacation, parental, family, medical, or sick leave;

(DD) allowance for dismissal or separation;

(EE) payment required for the provisions of group health care or group life, disability, vision, or dental benefits, including premiums;

(FF) payment of any retirements benefits;

(GG) payment of State or local tax assessed on the compensation of employees;

and

(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make payments is incurred; and

**(II)    shall not include—**

(aa) the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which compensation is paid or the obligation to pay the compensation is incurred;

(bb) Federal employment taxes imposed or withheld under Title 26 USC Chapters 21, 22, or 24 during the applicable period;

(cc) any compensation to an employee whose principal place of residence is outside of the United States;

(dd) qualified sick leave wages for which credit is allowed under Section 7001 of the Families First Coronavirus Response Act (Public Law 116-127);

(ee) qualified family leave wages for which a credit is allowed under Section 7003 of the Families First Coronavirus Response Act (Public Law 116-127) (15 USC §636(a)(36)(A)(viii).

**For loan forgiveness**, the term **covered period** means the period-

(A) beginning on the date of the origination of a covered loan; and,

(B) ending on a dated selected by the eligible recipient of the covered loan that occurs during the period-

(i)    beginning on the date that is 8-weeks after such date of origination; and

(ii)    ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)).

- 7 -

Exhibit C
Page 0014

Docket No. PPP-8685148703

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

    (1) Payroll costs.
    (2) Any payment of interest on any covered mortgage obligation.
    (3) Any payment on any covered rent obligation.
    (4) Any covered utility payment.
    (5) Any covered operations expenditure.
    (6) Any covered property damage cost.
    (7) Any covered supplier cost.
    (8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

**Application –** An eligible recipient shall submit to the lender a forgiveness application that shall include –

    (1) documentation verifying the number of full-time equivalent employees on payroll and pay rates for the periods…including –
      (A) payroll tax filings reported to the IRS; and
      (B) State income, payroll, and unemployment insurance filings;

    (2) documentation verifying payments for covered nonpayroll costs;

    (3) a certification from a representative of the eligible recipient authorized to make such certifications that –

      (A) the documentation presented is true and accurate; and

      (B) the amount of forgiveness requested was used to retain employees and make covered nonpayroll payments; and

    (4) any other documentation the Administrator determines necessary (15 USC §636m(e)(1)-(4)).

**Hold Harmless**

**(1) Definition**

The term initial or second draw PPP loan means a **covered loan** or loan under 15 USC §636(a), paragraph 37 (15 USC §636m(h)(1)).

**(2) Reliance**

A lender may rely on any certification or documentation submitted by an applicant for an initial or second draw PPP loan or an eligible recipient or eligible entity receiving initial or second draw PPP loan that—

Docket No. PPP-8685148703

(A) is submitted pursuant to all applicable statutory requirements, regulations, and guidance related to initial or second draw PPP loan, including under 15 USC §636(a), paragraphs 36 or 37, and 15 USC §636m; and

(B) attests that the applicant, eligible recipient, or eligible entity, as applicable, has accurately provided the certification or documentation to the lender in accordance with statutory requirements, regulations, and guidance (15 USC §636m(h)(2)(A)-(B)).

(3) **No Enforcement Action**

With respect to a lender that relies on a certification or documentation related to an initial or second draw PPP loan, an enforcement action may not be taken against the lender, and the lender shall not be subject to any penalties relating to loan origination or forgiveness of the initial or second draw PPP loan, if—

(A) the lender acts in good faith relating to loan origination or forgiveness of the initial or second draw PPP loan based on that reliance; and

(B) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the initial or second draw PPP loan (15 USC §636m(h)(3)(A)-(B)).

**No later than 30 days after March 27, 2020**, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e., paragraph 636m) of the Small Business Act (15 USC §636m(k)).

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[15] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

**No eligible borrower may receive more than one (1) First Draw PPP loan** (IFR #1, 85 Fed. Reg. Page 20811).

To apply for a PPP loan, the applicant must submit **SBA Form 2483 (Paycheck Protection Program Application Form)** and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

**The purpose of IFR #4** is to supplement previous regulations and guidance issued and to allow for the immediate implementation of the PPP (IFR #4, 85 Fed. Reg. Page 23450).

---

[15] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

Docket No. PPP-8685148703

IFR #4 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #4, 85 Fed. Reg. Page 23450).

**Limited Safe Harbor.**  Any borrower that applied for a PPP loan prior to the issuance of this regulation [on April 28, 2020] and repays the loan in full by **May 7, 2020**, will be deemed by SBA to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

The Administrator determined safe harbor is necessary and appropriate to ensure borrowers promptly repay PPP loan funds the borrower obtained based on a misunderstanding or misapplication of the required certification standard (IFR #4, 85 Fed. Reg. Pages 23451-23452).

**The purpose of IFR #9** is to revise IFR #4 by extending the safe harbor date to May 14, 2020 (IFR #9, 85 Fed. Reg. Page 29845).

**Limited Safe Harbor Extended.**  Any borrower that applied for a PPP loan and repays the loan in full by **May 14, 2020**, will be deemed to have made the required certification in good faith (IFR #9, 85 Fed. Reg. Page 29846).

**The purpose of IFR #13** is to revise IFR #9 by extending the safe harbor date to May 18, 2020 (IFR #9, 85 Fed. Reg. Page 31357).

**Limited Safe Harbor Extended.**  Any borrower that applied for a PPP loan and repays the loan in full by **May 18, 2020**, will be deemed to have made the required certification in good faith (IFR #9, 85 Fed. Reg. Page 31358).

**SBA is extending the repayment date for safe harbor** to May 14, 2020 (PPP-FAQs, Question #43 (May 5, 2020)).

**SBA is extending the repayment date for safe harbor** to May 18, 2020 (PPP-FAQs, Question #47 (May 13, 2020)).

**The purpose of IFR #26** is to implement the **Economic Aid Act** reauthorizing lending under the PPP (IFR #26, 86 Fed. Reg., Pages 3692, 3703).

IFR #26 applies to PPP loans applications submitted under the PPP after the Economic Aid Act (IFR #26, 86 Fed. Reg., Pages 3692).

IFR #26 also applies to PPP loans forgiveness applications submitted under the PPP before enactment of the Economic Aid Act where SBA has not remitted forgiveness payment (IFR #26, 86 Fed. Reg., Pages 3692).

Qualifying **payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage**, including insurance premiums, and retirement; **payment of state and local taxes assessed on**

- 10 -

Exhibit C
Page 0017

**compensation of employees**; and **for an independent contractor or sole proprietor**, **wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #26, 86 Fed. Reg., Para. B(4)(g), Page 3703).

**All PPP loans will be processed by all lenders under delegated authority** and lenders will be permitted to rely on certifications of the borrower in order to determine eligibility of the borrower and the use of loan proceeds (IFR #26, 86 Fed. Reg., Para. D(1)(3), Page 3709).

**The purpose of IFR #27** is to implement **Section 311 Economic Aid Act** authorizing Second Draw PPP loans under **Section 7(A) of the Small Business Act (15 USC §636(a)(37)** (IFR #27, 86 Fed. Reg., Page 3712).

**A borrower is eligible for a Second Draw PPP loan only if** it has 300 or fewer employees and experienced a revenue reduction in 2020 relative to 2019 (IFR #27, 86 Fed. Reg., Pt. III, Para. (A)(1), Page 3713).
**A Second Draw PPP loan may only be made available to an eligible borrower that** (i) received a First Draw PPP loan, and (ii) has used, or will use, the full amount of the First Draw PPP loan on or before the expected date on which the Second Draw PPP loan is disbursed to the borrower (IFR #27, 86 Fed. Reg., Pt. III, Para. (A)(1), Page 3713).

**In general, the maximum loan amount for a Second Draw PPP loan is** equal to the lesser of 2.5 months of the borrower's average payroll costs or $2 million (IFR #27, 86 Fed. Reg., Pt. III, Para. (D), Page 3715).

**An applicant is eligible for a Second Draw PPP loan if it is an eligible entity that:**

(i)   Previously received a First Draw PPP loan;

(ii)   Has used, or will use, the full amount of its First Draw PPP loan on or before the expected date the Second Draw PPP loan will be disbursed;

(iii)   Employees not more than 300 employees, unless it satisfies alternative criteria for businesses with a NAICS code beginning with 72 and eligible news organizations; and

(iv)   (A) Experienced a qualifying reduction in revenue in calendar year 2020 as follows:

(1) Had gross receipts in the 1st, 2nd, 3rd, or 4th quarter in 2020, that demonstrate at least a 25 percent reduction from the applicant's gross receipts during the same quarter in 2019;

(2) If applicant was not in business during 1st or 2nd quarter of 2019, but was in business during the 3rd and 4th quarters of 2019, had gross receipts during the 1st, 2nd, 3rd, or 4th quarter of 2020 that demonstrates at least a 25 percent reduction in gross receipts during the 3rd or 4th quarter of 2019;

(3) If applicant was not in business during the 1st, 2nd, or 3rd quarter of 2019, but was in business during the 4th quarter of 2019, had gross receipts during the 1st, 2nd,

Exhibit C
Page 0018

3rd, or 4th quarter of 2020 that demonstrate at least 25 percent reduction from 4th quarter of 2019; or

(4) If applicant was not in business during 2019, but was in operation on February 15, 2020, had gross receipts during the 2nd, 3rd, or 4th quarter of 2020 that demonstrate at least a 25 percent reduction from gross receipts of the 1st quarter of 2020 (IFR #27, 86 Fed. Reg., Pt. IV, Para. (c)(1)(i)-(iv)(A)(1)-(4), Pages 3717-3718).

(B) (1)An applicant that was in operation in all four (4) quarters of 2019 is deemed to have experienced the required revenue reduction if it experienced a reduction in annual receipts of 25 percent or greater in 2020 compared to 2019, and the borrower submits copies of its annual tax forms substantiating the revenue decline.

(2)(i) Gross receipts includes all revenue whatever formed received or accrued from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowance (IFR #27, 86 Fed. Reg., Pt. IV, Para. (c)(1)(i)-(iv)(A)-(B)(2)(i), Pages 3717-3718).

**An applicant is not eligible for a Second Draw PPP loan if** it is an entity that has previously received a Second Draw PPP loan (IFR #27, 86 Fed. Reg., Pt. IV, Para. (e)(8), Pages 3718-3719).

**In general, the maximum loan amount for a Second Draw PPP loan is** equal of the lesser of 2.5 months of the borrower's average monthly payroll costs or $2 million (IFR #27, 86 Fed. Reg., Pt. IV, Para. (f)(1), Page 3719).

**Payroll costs** has the same meaning as in **IFR #26** (IFR #27, 86 Fed. Reg., Pt. IV, Para. (f)(1), Page 3719).

**To apply for a Second Draw PPP loan**, the applicant must submit **SBA Form 2483-SD** (Paycheck Protection Program Second Draw Borrower Application Form) or the lender's equivalent form (IFR #27, 86 Fed. Reg., Pt. IV., Para. (g)(1), Page 3720).

**Second Draw PPP loans are eligible for loan forgiveness** (IFR #27, 86 Fed. Reg., Pt. IV, Para. (j), Page 3722).

**SBA may provide further guidance**, if needed, through SBA notices and a program guide which will be posted on SBA's website at www.sba.gov (IFR #27, 86 Fed. Reg., Pt. V, Page 3722).

**The purpose of IFR #28** is to implement the **Economic Aid Act** requirements for PPP loan forgiveness (IFR #28, 86 Fed. Reg., Pages 8283-8284).

For forgiveness, eligible **Payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal;**

Docket No. PPP-8685148703

**payment for the provision of employee benefits consisting of group health care coverage**, including insurance premiums, and retirement; **payment of state and local taxes assessed on compensation of employees**; and **for an independent contractor or sole proprietor**, **wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(1), Page 8286).

For forgiveness, eligible **Non-payroll costs** consist of:

  (2) Any payment of interest on any covered mortgage obligation.
  (3) Any payment on any covered rent obligation.
  (4) Any covered utility payment.
  (5) Any covered operations expenditure.
  (6) Any covered property damage cost.
  (7) Any covered supplier cost.
  (8) Any covered worker protection expenditure (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(1), Page 8286).

**The loan forgiveness form details the documentation** each borrower must submit with its Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S as applicable, or lender equivalent (IFR #28, 86 Fed. Reg., Pt. IV, Para. 6, Page 8293).

SBA may review any PPP loan the Administrator deems appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), Page 8294).
Eligible nonpayroll costs cannot exceed 40 percent of the loan forgiveness (IFR #28, 86 Fed. Reg., Pt. IV, Para. 1(a)(8)(C), Page 8297)

*Borrower Eligibility:* SBA may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Act, rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Amounts and Use of Proceeds:* SBA may review whether the borrower calculated the loan amount correctly and used loan proceeds for the allowable uses specified in the CARES Act (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Forgiveness Amounts:* SBA may review whether a borrower is entitled to the loan forgiveness amount claimed on the borrower's PPP loan forgives application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

An SBA determination a borrower is ineligible for a First Draw PPP loan may also result in an SBA determination the borrower is ineligible for any Second Draw PPP loan, and SBA may direct the lender to deny any loan forgiveness application submitted for the Second Draw PPP loan (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

If SBA determines the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

SBA may seek repayment of the outstanding PPP loan balance or pursue other available remedies (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

A borrower may appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrow (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(f), Page 8295).

OHA is established in SBA –

    (i)      to impartially decide matters related to program decisions of the Administrator; and,

    (ii)     to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)).

Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

    (i)      a Hearing Officer may hear cases under section 554 of the APA;

    (ii)     a Hearing Officer shall have the powers described in section 556(c) of the APA; and,

    (iii)    the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[16] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

    (1) administer oaths and affirmations;

    (2) issue subpoenas authorized by law;

    (3) rule on offers of proof and receive relevant evidence;

    (4) take depositions or have depositions taken when the ends of justice would be served;

    (5) regulate the course of the hearing;

---

[16] Section 556(b) of the APA requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

Docket No. PPP-8685148703

    (6) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);

    (7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;

    (8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;

    (9) dispose of procedural requests or similar matters;

   (10) make or recommend decisions in accordance with section 557 of the APA; and

   (11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

**The appellant has the burden of proof** in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Either SBA or Appellant may request reconsideration of an initial decision (13 CFR §1211(c)(1)).

The reconsideration request must clearly show an error of fact or law material to the decision (13 CFR §1211(c)(1)).

SBA does not have to file a response to a borrower's reconsideration request (13 CFR §1211(c)(1)).

- 15 -

Exhibit C
Page 0022

Docket No. PPP-8685148703

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

### **FINDINGS OF FACT AND ANALYSIS**

Based on the record, I make the following findings of fact (FOF)[17]:

1. On April 8, 2020, Appellant applied for a First Draw PPP loan (SBA Form 2483) in the amount of **$769,913.28** (PFR, Pages 4-16).

2. On April 30, 2020, Appellant applied for a second First Draw PPP loan (SBA Form 2483) in the amount of **$84,508.00** (AR, Pages 567-568).

3. On May 7, 2020, Appellant submitted an updated loan application (SBA Form 2483) for its initial First Draw PPP loan (SBA Form 2483) for the corrected amount of **$853,000.00** (AR, Pages 562-563).

4. The lender(s) funded and disbursed two (2) First Draw PPP loans to Appellant: PPP Loan # **5649057300** ($84,508.00) dispersed **May 1, 2020;** PPP Loan # **3533847202** ($853,000.00) disbursed **May 12, 2020** (AR, Pages 651, 657-658, 660-661, 663-664).

5. By letter, dated June 20, 2023, Appellant acknowledged knowing **as of May 2, 2020**, that PPP Loan # **5649057300** ($84,508.00) was deposited in its bank account (AR, Pages 608-609).

6. On March 24, 2021, Appellant applied for a Second Draw PPP loan (SBA Form 2483-SD) in the amount of **$920,500.00** (AR, Pages 542-545).

7. On April 8, 2021, the lender disbursed Appellant's Second Draw PPP loan for $920,500.00 (AR, Pages 2, 552).

8. On June 8, 2021, Appellant applied for full forgiveness (Form 3508EZ) of its Second Draw PPP loan (AR, Pages 549-551).

9. SBA selected Appellant's Second Draw PPP loan for review (AR, Pages 532-537).

10. SBA denied loan forgiveness after determining Appellant was ineligible to receive a Second Draw PPP loan because it received two First Draw PPP loans (AR, Pages 18-19).

SBA carries out the policies of the Small Business Act (15 USC §633(a)).

---

[17] **The FOF have been updated** based on documentation submitted with Appellant's PFR (*see* PFR, Pages 4-16).

Docket No. PPP-8685148703

The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m).

The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

**An eligible recipient of a First Draw PPP loan must certify** it does not have an application pending for duplicate First Draw PPP loan for the same purpose and duplicate amount (15 UCC §636(a)(36)(G)(i)(III)).

**No eligible borrower** may receive more than one (1) First Draw PPP loan (IFR #1, 85 Fed. Reg. Page 20811).

**Any borrower that applied for a PPP loan prior to IFR #4** and repays the loan in full by May 7, 2020, is be deemed to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

**Safe harbor is extended to** <u>any borrower</u> that applied for a PPP loan and repays the loan in full by **May 14, 2020** (IFR #9, 85 Fed. Reg. Page 29846; PPP-FAQs, Question #43).

**Safe harbor is extended to** <u>any borrower</u> that applied for a PPP loan and repays the loan in full by **May 18, 2020** (IFR #9, 85 Fed. Reg. Page 31358; PPP-FAQs, Question #47).

**To be eligible for a Second Draw PPP loan** a business concern must employ not more than 300 employees, experienced a qualifying 25 percent reduction in gross receipts in 2020, received a First Draw PPP loan, and on or before the disbursal date of the Second Draw PPP used or will use the full amount of the First Draw PPP loan (15 USC §636(a)(37)(A)(iv)(I)-(aa)-(bb); 15 USC §636(a)(37)(O)(i)-(ii)); (IFR #27, 86 Fed. Reg., Pt. III, Para. (A)(1), Page 3713; IFR #27, 86 Fed. Reg., Pt. IV, Para. (c)(1)(i)-(iv)(A)-(B)(2)(i), Pages 3717-3718).

Except as otherwise provided, SBA may guarantee covered Second Draw PPP loans under the same terms, conditions, and processes First Draw PPP loans made under 15 USC §636(a)(36) (15 USC §636(a)(37)(B)).

An eligible entity may **only receive one (1) Second Draw PPP loan** (15 USC §636(a)(37)(F)).

Section 1106 of the CARES Act establishes PPP loan forgiveness (P.L. 116-36, §1106; 15 USC §636m).

**An eligible recipient of a PPP loan can receive loan forgiveness** equal to qualifying costs and payments, including payroll costs (15 USC §636m(b)(1); *see also* 15 USC §636(a)(36)(A)(ii); 15 USC §636m(a)(1); 15 USC §636m(a)(10)).

**Payroll costs for employees** includes salary, wage, commission, or similar compensation; payment of cash tip or equivalent; payment for vacation, parental, family, medical, or sick leave; allowance for dismissal or separation; payment required for the provisions of group health care or group life, disability, vision, or dental benefits, including premiums; payment of any

- 17 -

Exhibit C
Page 0024

Docket No. PPP-8685148703

retirements benefits; payment of State or local tax assessed on the compensation of employees (15 USC §636(a)(36)(A)(viii); IFR #26, Para. B(4)(g), 86 Fed. Reg., Page 3703; IFR #27, 86 Fed. Reg., Pt. IV, Para. (f)(1), Page 3719; IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(1), Page 8286).

**All PPP loans will be processed by all lenders under delegated authority** (IFR #26, 86 Fed. Reg., Para. D(1)(3), Page 3709).

**An applicant is not eligible for a Second Draw PPP loan if** it previously received a Second Draw PPP loan (IFR #27, 86 Fed. Reg., Pt. IV, Para. (e)(8), Pages 3718-3719).

**To apply for a Second Draw PPP loan**, the applicant must submit **SBA Form 2483-SD** or the lender's equivalent form (IFR #27, 86 Fed. Reg., Pt. IV., Para. (g)(1), Page 3720).

**SBA may review** any PPP loan it deems appropriate, including borrower eligibility, loan amounts and use of proceeds, and loan forgiveness amount (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), 1(b), and 1(e), Pages 8294-8295).

**An SBA determination a borrower is ineligible for a First Draw PPP loan** may also result in an SBA determination the borrower is ineligible for any Second Draw PPP loan (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

**If SBA determines the borrower is ineligible for PPP loan or forgiveness,** SBA will direct the lender to deny loan forgiveness application in whole or in part (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

**SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

**The appellant has the burden of proof** in a PPP appeal (13 CFR §134.1210).

Either SBA or Appellant may request reconsideration of an initial decision (13 CFR §1211(c)(1)).

The reconsideration request must clearly show an error of fact or law material to the decision (13 CFR §1211(c)(1)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

**THE RECORD SHOWS** Appellant applied for two First Draw PPP loans (PPP Loan # **5649057300** ($84,508.00); PPP Loan # **3533847202** ($853,000.00)), including submitting a corrected application for PPP Loan # **3533847202**. The record also shows Appellant received the two First Draw PPP loans. The record further shows Appellant applied for and received a Second Draw PPP loan. Appellant applied for full forgiveness of its Second Draw PPP loan and SBA selected the loan for review. SBA denied loan forgiveness on the Second Draw PPP loan because Appellant received two First Draw PPP loans (FOF 1-10).

Docket No. PPP-8685148703

**IN ITS PFR,** Appellant argues OHA's initial decision contains the following errors of fact that if corrected would materially affect the outcome of this case:

- Appellant originally applied for PPP Loan # **3533847202** ($853,000.00) on April 8, 2020, and the loan was funded on April 27, 2020, which means OHA has wrongly concluded Appellant applied for PPP Loan # **3533847202** after receiving the funds for PPP Loan # **5649057300** ($84,508.00).

- Appellant did not incorrectly certify its application for PPP Loan # **3533847202** because it originally applied for the loan on April 8, 2020, which is before the application date of PPP Loan # **5649057300.**

- Unfair time constraints were placed on Appellant by only allowing 10 days for Appellant to obtain the original loan application for PPP Loan # **3533847202** to include with its PFR.

- OHA has retroactively applied SBA's safe harbor provisions to Appellant (PFR, Pages 1-2).

Appellant also argues the following additional grounds exists for reconsideration:

- SBA should not exercise its discretion to review a PPP loan based on incorrect facts.

- Appellant did not willingly "miscertify" any PPP loan application.

- Appellant returned the duplicate First Draw PPP loan (PPP Loan # **5649057300**) on December 8, 2020 (PFR, Pages 2-3).

I am not persuaded by Appellant's arguments on reconsideration for the following reasons:

**Appellant incorrectly certified the updated application for PPP Loan # 3533847202.**
Appellant acknowledges and the record now shows Appellant initially applied for **PPP Loan # 3533847202** on April 8, 2020, for **$769,913.28** (FOF 1). The record also shows Appellant submitted an updated application for **PPP Loan # 3533847202** on May 7, 2020, for the corrected amount of $853,000.00 (FOF 3). The record further shows Appellant submitted its updated application for **PPP Loan # 3533847202** after receiving the funds for PPP Loan # **5649057300** (FOF 4). The record demonstrates Appellant's representative incorrectly certified the updated application for **PPP Loan # 3533847202**, by indicating Appellant <u>had not received</u> any other First Draw PPP loan (SBA Form 2483 at AR, Page 563), and did so knowing Appellant had already received the funds for another First Draw loan (PPP Loan # **5649057300**)[18, 19].

---

[18] The funding of **PPP Loan # 3533847202** on **April 27, 2020** (AR, Page 651) is irrelevant because it is clear from the record Appellant's initial application for this loan was not approved or processed, and it was the corrected application submitted on **May 7, 2020**, that was approved and processed for the loan (*see* FOF 3-4).

[19] **I do not understand why Appellant's representative** did not correctly certify the updated application for **PPP Loan # 3533847202** by indicating Appellant had already received another First Draw PPP loan. Had the representative simply indicated Appellant received PPP Loan # **5649057300** it would have alerted the lender to this issue and the need to address PPP Loan # **5649057300** before disbursing PPP Loan # **3533847202**.

**Appellant has not been subject to unfair time constraints.**  A PFR must be filed within 10 calendar days after service of OHA's initial decision (13 CFR §1211(c)(1)).  Appellant argues this 10-day time constraint was unfair and prejudicial regarding Appellant obtaining and submitting the original application for **PPP Loan # 3533847202**.  The record does not support Appellant was limited to 10 days to provide the original application.  The OHA <u>Case Portal</u> shows SBA submitted the administrative record on May 22, 2024.  OHA's initial decision was issued in the OHA <u>Case Portal</u> on June 24, 2024.  The record demonstrates Appellant had **more than <u>30 calendar days</u>** to review the administrative record and submit the original application before OHA issued its initial decision[20].

**Safe harbor has not been retroactively applied.**  Safe harbor was a benefit first offered under IFR #4 to borrowers who applied for a PPP loan on or before April 28, 2020 (IFR #4, 85 Fed. Reg. Pages 23450- 23451), and then extended to all borrowers under IRF #s 9 and 13 (IFR #9, 85 Fed. Reg. Page 29846; IFR #13, 85 Fed. Reg. Page 31358).  SBA notified borrowers through its guidance that safe harbor was available for a limited time and its IFRs would be updated to show safe harbor had been offered (PPP-FAQs, Question 43 (May 5, 2020); PPP-FAQs, Question 47 (May 13, 2020)).  OHA's initial decision does not retroactively apply safe harbor to Appellant but simply documents safe harbor was available to borrowers, SBA gave borrowers notice of this benefit, and there is no evidence indicating Appellant took advantage of safe harbor to address its multiple First Draw PPP loans.

**SBA has not abused its discretion in reviewing Appellant's Second Draw PPP loan.**  The loan at issue in this appeal is Appellant's Second Draw PPP loan (PPP Loan # **8685148703**).  OHA has updated its FOF to show Appellant initially applied for a First Draw PPP loan (**PPP Loan # 3533847202**) on April 8, 2020 (*see* FOF 1).  The updated (i.e., corrected) FOF put Appellant's actions in a worse light then before, as the FOF now show despite having an additional opportunity to correctly certify the application for **PPP Loan # 3533847202** and put the lender on notice it had already received the funds for PPP Loan # **5649057300**, Appellant incorrectly certified the updated application for **PPP Loan # 3533847202**, and did so knowingly, willfully, and purposefully.  Appellant's actions under OHA's corrected FOF are still the cause of Appellant receiving two First Draw PPP loans and making Appellant ineligible for loan forgiveness on its Second Draw PPP loan.

**Appellant did not correctly certify its updated loan application.**  As previously discussed, Appellant did not correctly certify its updated application for **PPP Loan # 3533847202**.  Any reliance on this updated application by the lender that resulted in Appellant erroneously receiving multiple First Draw PPP loans does not provide a basis to grant relief to Appellant (15 USC §636m(h)(1)-(3); IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8293).

**There is no basis for OHA to grant relief to Appellant for returning the duplicate loan.**  Appellant indicates it returned PPP Loan # **5649057300** on December 8, 2020 (PFR, Page 3)  Appellant, however, does not cite to, and I can find no statute, regulation, policy, or guidance that authorizes OHA to approve loan forgiveness for a borrower that obtain multiple First Draw

---

[20] The only objections filed to the administrative record by Appellant was an SBA Declaration of Identity Theft (**SBA Form 3513**) (Appellant Objections (AO), Pages 1-5.  Although OHA's Notice and Order set a filing deadline for objections of June 3, 2024 (OHA Notice and Order, Page 5), **nothing prevented Appellant from filing a motion for a <u>supplemental pleading</u> to submit the original application before OHA issued its initial decision** (13 CFR §134.207(b)).

Docket No. PPP-8685148703

PPP loans because of the borrower's willful actions of incorrectly certifying a loan application (SBA Form 2483).

**THE PFR DOES NOT** provide a basis to reverse OHA's initial decision. The reasoning of OHA's initial decision is incorporated herein (i.e., reissued) in support of this reconsideration decision with the appropriate modifications to account for the updated/corrected FOF:

**IN ITS APPEAL PETITION,** Appellant acknowledges receiving two First Draw PPP loans but argues its Second Draw PPP loan should be forgiven for the following reasons:

- Appellant met the eligibility requirements for a Second Draw PPP loan.

- One of the First Draw PPP loans (PPP Loan # **5649057300** ($84,508.00)) was fraudulently requested by the owner's ex-wife.

- Appellant repaid the fraudulent First Draw PPP loan with interest in December 2020.

- The lenders failed to provide Appellant adequate guidance on how to handle the fraudulent First Draw PPP loan.

- SBA failed to prevent the issuing of the fraudulent First Draw PPP loan by flagging it as a duplicate loan and mistakenly approved Appellant's Second Draw PPP loan despite being aware of the fraudulent loan (Appeal Petition (AP), Pages 1-6, Exhibits 1, 3).

I am not persuaded by Appellant's arguments for the following reasons:

**Appellant incorrectly certified the updated loan application for PPP Loan # 3533847202.** The CARES Act requires all borrowers to certify they will not receive a duplicate First Draw PPP loan (15 UCC §636(a)(36)(G)(i)(III)). IRF #1 limits eligible borrowers to one (1) First Draw PPP loan (IFR #1, 85 Fed. Reg. Page 20811). Despite the CARES Act and IFR #1's prohibitions against multiple First Draw PPP loans, when submitting the updated application for First Draw PPP Loan # **3533847202** ($853,000.00), Appellant's representative signed SBA Form 2483 certifying the following:

- During the period beginning on February 15, 2020, and ending on December 31, 2020, the Applicant has not and will not receive another loan under the [PPP] (SBA Form 2483 at AR, Page 563).

The record shows Appellant applied for and received two First Draw PPP loans (PPP Loan #s 5649057300; 3533847202) (AR, Pages 562-563, 567-568, 651, 657-658, 660-661, 663-664; PFR, Pages 4-16; FOF 1-4). The record also shows Appellant knew it had received PPP loan #**5649057300** at least five (5) days before updating its application for PPP loan # 3533847202 (AR, Pages 608-609; FOF 5). The record supports Appellant incorrectly certified the updated loan application for PPP loan # **3533847202**, and did so willingly, knowingly, and purposefully.

**IFR #1 applies to Appellant's First Draw PPP loan applications.** IFR #1 has both an *effective date* and an *applicability date*. The effective date, April 15, 2020, is the date IFR #1 was published in the *Federal Register*. The applicability date indicates IFR #1 applies to applications

Docket No. PPP-8685148703

submitted under the PPP through June 30, 2020, or until funds are exhausted (IFR #1, 85 Fed. Reg. Page 20812). IFR #1 is effective without advance notice and is issued for the immediate implementation of the PPP (IFR #1, 85 Fed. Reg. Page 20812). Despite its immediate effective date, SBA did provide advance notice of IFR #1 by publishing the rule on the U.S. Department of Treasury (USDT's) website on April 2, 2020. IFR #1's applicability date makes clear the rule will apply to all loan applications received under the PPP through June 30, 2020. The record shows Appellant's First Draw PPP loan applications were submitted and approved when IFR #1 was applicable to all applications (AR, Pages 562-563, 567-568, 651, 657-658, 660-661, 663-664; PFR, Pages 4-16; FOF 1-4). IFR #1 applies to Appellant's First Draw PPP loan applications. Under IFR #1, a borrower may receive only one First Draw PPP loan (IFR #1, 85 Fed. Reg. Page 20811) [21], [22], [23], [24].

**Safe harbor was available to Appellant.** With IFR #4, SBA offered borrowers that applied for a PPP loan prior to April 28, 2020, and incorrectly certified their eligibility for the loan a **safe harbor though May 7, 2020, to repay the loan** (IFR #4, 85 Fed. Reg. Pages 23450- 23451). With IRF #9, SBA extended safe harbor to any borrower that applied for a PPP loan and repays the loan in full by **May 14, 2020** (IFR #9, 85 Fed. Reg. Page 29846)[25], [26]. With IRF #13, SBA extended safe harbor to any borrower that applied for a PPP loan and repays the loan in full by **May 18, 2020** (IFR #13, 85 Fed. Reg. Page 31358)[27]. There is no evidence in the record Appellant sought to use the safe harbor provisions to review its First Draw PPP loan applications for compliance with SBA's regulations and guidance or to repay any of its First Draw PPP loans during the safe harbor period.

**Appellant had notice safe harbor was available.** SBA guidance available to Appellant before it submitted its updated application for **PPP Loan # 3533847202**, and after it received both First Draw PPP loans (#s 5649057300; 3533847202) informs borrowers of safe harbor:

---

[21] **IFR #1 was published/released on the USDT's PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program).

[22] **SBA launched the PPP on April 3, 2020, a day after giving advance notice of IFR #1** (Source: SBA.gov at https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches).

[23] **The CARES Act makes clear the PPP will be administered under regulations issued by the SBA Administrator through emergency rulemaking authority (15 USC §9012; 15 USC §636m(k)).**

[24] **Neither the APA nor the applicable regulations** grant an OHA Judge the authority to invalidate or not follow SBA regulations interpreting the CARES Act (*see* 5 USC § 556(c)(1)-(11); 13 CFR Pt. 134, SubPt. L). **OHA Judges must apply IFR #1 to PPP loan applications.**

[25] IFR #9 was published/released on the USDT's PPP webpage on **May 8, 2020** (https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program).

[26] **The applicability date of IFR #9** indicates it applies to borrowers who applied for loans under the PPP (IFR #9, 85 Fed. Reg. Page 29845).

[27] IFR #13 was published/released on the USDT's PPP webpage on **May 20, 2020** (https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program).

Exhibit C
Page 0029

Docket No. PPP-8685148703

**Question:** FAQ #31 reminded borrowers to review carefully the required certification on the Borrower Application Form that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." SBA guidance and regulations provide that any borrower who applied for a PPP loan prior to April 24, 2020 and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith. Is it possible for a borrower to obtain an extension of the May 7, 2020 repayment date?

**Answer:** SBA is extending the repayment date for this safe harbor to May 14, 2020. Borrowers do not need to apply for this extension. This extension will be promptly implemented through a revision to the SBA's [IRF] providing the safe harbor. SBA intends to provide additional guidance on how it will review the certification prior to May 14, 2020 (PPP-FAQs, Question 43 (May 5, 2020)).

**Question:** An SBA [IRF] posted on May 8, 2020 provided that any borrower who applied for a PPP loan and repays the loan in full by May 14, 2020 will be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith. Is it possible for a borrower to obtain an extension of the May 14, repayment date?

**Answer:** Yes, SBA is extending the repayment date for safe harbor to May 18, 2020, to give borrowers an opportunity to review and consider FAQ #46. Borrowers do no need to apply for this extension. This extension will be promptly implemented through a revision to the SBA's [IRF] providing safe harbor (PPP-FAQs, Question 47 (May 13, 2020)).

This guidance and the early postings of IRFs #s 9 and 13 to the Treasury website[28] make clear safe harbor was available to borrowers to repay First Draw PPP loans they mistakenly received[29, 30].

**Appellant is not eligible for forgiveness of its Second Draw PPP loan.** A borrower may receive only one First Draw PPP loan (IFR #1, 85 Fed. Reg. Page 20811), and one Second Draw PPP loan (15 USC §636(a)(37)(F); IFR #27, 86 Fed. Reg., Pt. IV, Para. (e)(8), Pages 3718-3719). A determination a borrower is ineligible for a First Draw PPP loan may also result in a determination the borrower is ineligible for any Second Draw PPP loan (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295). The record shows Appellant willingly submitted an updated application for a First Draw PPP loan five days after it became aware that it had already received the funds for another First Draw PPP loan (*see* FOF 1-5). The record also shows Appellant applied for and received a Second Draw PPP loan after receiving two First Draw PPP loans (*see* FOF 6-7). The record supports Appellant applied for and received more than the allowable number of PPP loans (i.e., two (2) loans). The record also supports Appellant received its

---

[28] *See* Footnotes 25, 27

[29] A copy of SBA's guidance (May 13, 2020) is provided for Appellant's review as **attached Exhibit A**.

[30] Contrary to Appellant's willful actions with PPP loan # 3533847202, under the CARES Act and IRF #1 **no borrower can certify necessity for a second First Draw PPP loan** (15 UCC §636(a)(36)(G)(i)(III); IFR #1, 85 Fed. Reg. Page 20811).

Docket No. PPP-8685148703

Second Draw PPP loan after it had already received the allowable number of loans.  The record demonstrates Appellant's Second Draw PPP loan is an ineligible third PPP loan that is ineligible for forgiveness.

**An approved loan application does not prevent SBA from finding Appellant ineligible for loan forgiveness.**  At its discretion, SBA may review any PPP loan anytime **(**IFR #28, 86 Fed. Reg., Pt. V, Para. 1(c), Page 8294).  SBA may review any PPP loan for borrower eligibility, loan amounts, use of proceeds, and loan forgiveness amount (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), 1(b), and 1(e), Pages 8294-8295).  The standard of review in PPP appeals is whether the final SBA loan review decision is based on a clear error of fact or law (13 CFR §134.1210).  SBA exercised its discretion and selected Appellant's Second Draw PPP loan for review (FOF 9).  After completing its review, SBA found Appellant was ineligible for the Second Draw PPP loan because it received two First Draw PPP loans (FOF 10).  Appellant's Second Draw PPP loan application is part of the administrative record reviewed by SBA in making its decision (AR, Pages 542-545).  It is clear from the final loan review decision SBA determined Appellant's application was approved in error and Appellant should not have received a Second Draw PPP loan and cannot receive loan forgiveness (AR, Pages 18-19).  Under the applicable regulations, an approved loan application does not prevent SBA from reviewing a PPP loan or finding a borrower ineligible for loan forgiveness[31, 32].

**The lender is not responsible for mistakes in Appellant's PPP loan application**.  Lenders, not SBA, process and approve PPP loan applications (IFR #26, 86 Fed. Reg., Para. D(1)(3), Page 3709).  Under the CARES Act and IFR #28, a lender may rely on the certifications and documents submitted by a PPP loan applicant and no enforcement action can be taken against a lender that acts in good faith in relying on the certifications or documents (15 USC §636m(h)(1)-(3); IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8293).  The record does not support, and Appellant has not demonstrated, its lender acted in bad faith in relying on the certifications and documents submitted by Appellant with the loan application or when approving Appellant's Second Draw PPP loan.  Any errors made by the lender in approving the Second Draw PPP loan by relying on certifications and documentation submitted by Appellant does not provide a basis to grant Appellant relief and/or reverse SBA's final loan review decision[33, 34].

---

[31] **A borrower's reliance on an approved loan application to guarantee loan forgiveness is misplaced.**  The applicable regulations allow SBA to review any First Draw and Second Draw PPP loan anytime within the 6-year period following loan forgiveness (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(c), Page 8294).  In other words, **SBA can review/audit any forgiven First Draw and Second Draw PPP loans (i.e., loans with approved loan and forgiveness applications) anytime during the applicable 6-year period.**

[32] **Appellant should be mindful of this 6-year review window,** as the record supports Appellant willingly, knowingly, and purposefully incorrectly certified its updated loan application for PPP loan # **3533847202 ($853,000.00).**

[33] **OHA only has jurisdiction to review final SBA loan review decisions** (13 CFR §134.1201(b)(1)-(4)).  OHA does not have jurisdiction to review a lender's decision(s) concerning a PPP loan (13 CFR §134.1201(c)).

[34] **If Appellant believes the lender acted in bad faith in approving its PPP loan, Appellant has the option of talking with the SBA Office of Inspector General (SBA OIG) about the lender's actions in this matter.**  SBA OIG contact and procedure information can be found at https://www.sba.gov/about-sba/oversight-advocacy/office-inspector-general.

The record supports Appellant received more than the allowable number of PPP loans.  The record also supports Appellant was ineligible for the Second Draw PPP loan at issue in this appeal (PPP loan # **8685148703**) and is ineligible for PPP loan forgiveness.  The record demonstrates SBA properly applied the applicable laws, regulations, policy, and guidance when denying Appellant's forgiveness application.  The reasoning of OHA's initial decision remains supported by the record.  I therefore find the final SBA loan review decision is not based on clear error of fact or law.  The final SBA loan review decision is AFFIRMED[35].

## CONCLUSIONS OF LAW

**Appellant received more than the allowable number of PPP loans.**

**Appellant was ineligible for the Second Draw PPP loan at issue in this appeal.**

**Appellant is ineligible for PPP loan forgiveness**.

The final SBA loan review decision is not based on clear error of fact or law.

**OHA's initial decision does not contain** a clear error of fact or law material to the decision.

**Appellant remains liable** for the Second Draw PPP loan (PPP Loan Number **8685148703**)[36, 37].

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIRMED**.

Appellant's forgiveness application will be processed in accordance with this decision.

**This is a RECONSIDERED INITIAL DECISION** and shall become the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

_____

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

---

[35] **Given the early postings of IFR #9 and IRF #13 and available SBA guidance** (*see* Footnotes 7, 25, 27), I find it difficult to believe Appellant was unable to determine the proper course of action was to return/repay the duplicate/additional First Draw PPP loan (PPP loan #**5649057300**) during the safe harbor period.  **Under the PPP, it is the borrower's responsibility** to ensure its PPP loans comply with the applicable statutes, regulations, guidance, and policies.

[36] **SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

[37] Appellant's objection(s) is SBA Form 3513 (AO, Pages 1-5).  OHA does not have authority to review identity theft issues (*see* Footnote 33), and **SBA Form 3513 cannot be filed with SBA through the OHA Case Portal**.  To assist Appellant, **OHA's Identity Theft Information Sheet is attached as Exhibit B**.

Docket No. PPP-8685148703

## <u>NOTICE OF APPEAL RIGHTS AND PROCEDURES</u>

A **RECONSIDERED INITIAL DECISION** becomes the **FINAL DECISION of SBA** 30 calendar days after service unless the SBA Administrator decides to review or reverse the decision (13 CFR §134.1211(c)(3)).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of a reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion,</u> may elect to review and/or reverse a reconsidered initial decision (13 CFR §134.1211(d)).

**If the SBA Administrator issues a decision, it will become the FINAL DECISION of SBA upon issuance** (13 CFR §134.1211(d)).

Neither initial nor final decisions issued by OHA on a PPP loan appeal under Subpart L are precedential (13 CFR §134.1211(e)).

**FINAL DECISIONS may be appealed** to the appropriate Federal district court only (13 CFR §134.1211(g)).

Exhibit C
Page 0033

As of May 13, 2020

**PAYCHECK PROTECTION PROGRAM LOANS**
Frequently Asked Questions (FAQs)

The Small Business Administration (SBA), in consultation with the Department of the Treasury, intends to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), established by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act). This document will be updated on a regular basis.

Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules") (link). The U.S. government will not challenge lender PPP actions that conform to this guidance,[1] and to the PPP Interim Final Rules and any subsequent rulemaking in effect at the time.

1.  **Question:** Paragraph 3.b.iii of the PPP Interim Final Rule states that lenders must "[c]onfirm the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing the payroll documentation submitted with the borrower's application." Does that require the lender to replicate every borrower's calculations?

    **Answer:** No. Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower attests to the accuracy of those calculations on the Borrower Application Form. Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost. For example, minimal review of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable. In addition, as the PPP Interim Final Rule indicates, lenders may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs.

    If the lender identifies errors in the borrower's calculation or material lack of substantiation in the borrower's supporting documents, the lender should work with the borrower to remedy the issue.[2]

2.  **Question:** Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers in the PPP?

    **Answer:** No. Small business concerns can be eligible borrowers even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-

---

[1] This document does not carry the force and effect of law independent of the statute and regulations on which it is based.
[2] Question 1 published April 3, 2020.

EX A P1

Exhibit C
Page 0034

As of May 13, 2020

based size standard corresponding to its primary industry.  Go to www.sba.gov/size for the industry size standards.

Additionally, a business can qualify for the Paycheck Protection Program as a small business concern if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for PPP loans on the Borrower Application Form, unless otherwise ineligible.

3.  **Question:**  Does my business have to qualify as a small business concern (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) in order to participate in the PPP?

   **Answer:**  No.  In addition to small business concerns, a business is eligible for a PPP loan if the business has 500 or fewer employees whose principal place of residence is in the United States, or the business meets the SBA employee-based size standards for the industry in which it operates (if applicable).  Similarly, PPP loans are also available for qualifying tax-exempt nonprofit organizations described in section 501(c)(3) of the Internal Revenue Code (IRC), tax-exempt veterans organization described in section 501(c)(19) of the IRC, and Tribal business concerns described in section 31(b)(2)(C) of the Small Business Act that have 500 or fewer employees whose principal place of residence is in the United States, or meet the SBA employee-based size standards for the industry in which they operate.

4.  **Question:**  Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?

   **Answer:**  No.  It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.

5.  **Question:**  Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

   **Answer:**  Yes.  Borrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation.  A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable.  SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2).

EX A P2

Exhibit C
Page 0035

As of May 13, 2020

6.  **Question:**  The affiliation rule based on ownership (13 C.F.R. 121.301(f)(1)) states that SBA will deem a minority shareholder in a business to control the business if the shareholder has the right to prevent a quorum or otherwise block action by the board of directors or shareholders.  If a minority shareholder irrevocably gives up those rights, is it still considered to be an affiliate of the business?

    **Answer:**  No.  If a minority shareholder in a business irrevocably waives or relinquishes any existing rights specified in 13 C.F.R. 121.301(f)(1), the minority shareholder would no longer be an affiliate of the business (assuming no other relationship that triggers the affiliation rules).

7.  **Question:**  The CARES Act excludes from the definition of payroll costs any employee compensation in excess of an annual salary of $100,000.  Does that exclusion apply to all employee benefits of monetary value?

    **Answer:**  No.  The exclusion of compensation in excess of $100,000 annually applies only to cash compensation, not to non-cash benefits, including:
    - employer contributions to defined-benefit or defined-contribution retirement plans;
    - payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums; and
    - payment of state and local taxes assessed on compensation of employees.

8.  **Question:**  Do PPP loans cover paid sick leave?

    **Answer:**  Yes.  PPP loans covers payroll costs, including costs for employee vacation, parental, family, medical, and sick leave.  However, the CARES Act excludes qualified sick and family leave wages for which a credit is allowed under sections 7001 and 7003 of the Families First Coronavirus Response Act (Public Law 116–127).  Learn more about the Paid Sick Leave Refundable Credit here.

9.  **Question:**  My small business is a seasonal business whose activity increases from April to June.  Considering activity from that period would be a more accurate reflection of my business's operations.  However, my small business was not fully ramped up on February 15, 2020.  Am I still eligible?

    **Answer:**  In evaluating a borrower's eligibility, a lender may consider whether a seasonal borrower was in operation on February 15, 2020 or for an 8-week period between February 15, 2019 and June 30, 2019.

10. **Question:**  What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?

    **Answer:**  SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on

Exhibit C
Page 0036

As of May 13, 2020

the Employer Identification Number (EIN) of the PEO or other payroll provider. In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation. Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes. In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO.

11. **Question:** May lenders accept signatures from a single individual who is authorized to sign on behalf of the borrower?

   **Answer:** Yes. However, the borrower should bear in mind that, as the Borrower Application Form indicates, only an authorized representative of the business seeking a loan may sign on behalf of the business. An individual's signature as an "Authorized Representative of Applicant" is a representation to the lender and to the U.S. government that the signer is authorized to make the certifications, including with respect to the applicant and each owner of 20% or more of the applicant's equity, contained in the Borrower Application Form. Lenders may rely on that representation and accept a single individual's signature on that basis.

12. **Question:** I need to request a loan to support my small business operations in light of current economic uncertainty. However, I pleaded guilty to a felony crime a very long time ago. Am I still eligible for the PPP?

   **Answer:** Yes. Businesses are only ineligible if an owner of 20 percent or more of the equity of the applicant is presently incarcerated, on probation, on parole; subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or, within the last five years, for any felony, has been convicted; pleaded guilty; pleaded nolo contendere; been placed on pretrial diversion; or been placed on any form of parole or probation (including probation before judgment).

13. **Question:** Are lenders permitted to use their own online portals and an electronic form that they create to collect the same information and certifications as in the Borrower Application Form, in order to complete implementation of their online portals?

   **Answer:** Yes. Lenders may use their own online systems and a form they establish that asks for the same information (using the same language) as the Borrower Application Form. Lenders are still required to send the data to SBA using SBA's interface.

14. **Question:** What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?

As of May 13, 2020

**Answer:** In general, borrowers can calculate their aggregate payroll costs using data either from the previous 12 months or from calendar year 2019. For seasonal businesses, the applicant may use average monthly payroll for the period between February 15, 2019, or March 1, 2019, and June 30, 2019. An applicant that was not in business from February 15, 2019 to June 30, 2019 may use the average monthly payroll costs for the period January 1, 2020 through February 29, 2020.

Borrowers may use their average employment over the same time periods to determine their number of employees, for the purposes of applying an employee-based size standard. Alternatively, borrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application (or the average number of employees for each of the pay periods that the business has been operational, if it has not been operational for 12 months).

15. **Question:** Should payments that an eligible borrower made to an independent contractor or sole proprietor be included in calculations of the eligible borrower's payroll costs?

**Answer:** No. Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs. However, an independent contractor or sole proprietor will itself be eligible for a loan under the PPP, if it satisfies the applicable requirements.

16. **Question:** How should a borrower account for federal taxes when determining its payroll costs for purposes of the maximum loan amount, allowable uses of a PPP loan, and the amount of a loan that may be forgiven?

**Answer:** Under the Act, payroll costs are calculated on a gross basis without regard to (i.e., not including subtractions or additions based on) federal taxes imposed or withheld, such as the employee's and employer's share of Federal Insurance Contributions Act (FICA) and income taxes required to be withheld from employees. As a result, payroll costs are not reduced by taxes imposed on an employee and required to be withheld by the employer, but payroll costs do not include the employer's share of payroll tax. For example, an employee who earned $4,000 per month in gross wages, from which $500 in federal taxes was withheld, would count as $4,000 in payroll costs. The employee would receive $3,500, and $500 would be paid to the federal government. However, the employer-side federal payroll taxes imposed on the $4,000 in wages are excluded from payroll costs under the statute.[3]

---

[3] The definition of "payroll costs" in the CARES Act, 15 U.S.C. 636(a)(36)(A)(viii), excludes "taxes imposed or withheld under chapters 21, 22, or 24 of the Internal Revenue Code of 1986 during the covered period," defined as February 15, 2020, to June 30, 2020. As described above, the SBA interprets this statutory exclusion to mean that payroll costs are calculated on a gross basis, without subtracting federal taxes that are imposed on the employee or withheld from employee wages. Unlike employer-side payroll taxes, such employee-side taxes are ordinarily expressed as a reduction in employee take-home pay; their exclusion from the definition of payroll costs means payroll costs should not be reduced based on taxes imposed on the employee or withheld from employee wages. This interpretation is consistent with the text of the statute and advances the legislative purpose of ensuring workers

As of May 13, 2020

17. **Question:** I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020.  Do I need to take any action based on the updated guidance in these FAQs?

   **Answer:** No.  Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.  However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.

18. **Question:** Are PPP loans for existing customers considered new accounts for FinCEN Rule CDD purposes?  Are lenders required to collect, certify, or verify beneficial ownership information in accordance with the rule requirements for existing customers?

   **Answer:** If the PPP loan is being made to an existing customer and the necessary information was previously verified, you do not need to re-verify the information.

   Furthermore, if federally insured depository institutions and federally insured credit unions eligible to participate in the PPP program have not yet collected beneficial ownership information on existing customers, such institutions do not need to collect and verify beneficial ownership information for those customers applying for new PPP loans, unless otherwise indicated by the lender's risk-based approach to BSA compliance.[4]

19. **Question:** Do lenders have to use a promissory note provided by SBA or may they use their own?

   **Answer:** Lenders may use their own promissory note or an SBA form of promissory note.

20. **Question:** The amount of forgiveness of a PPP loan depends on the borrower's payroll costs over an eight-week period; when does that eight-week period begin?

   **Answer:** The eight-week period begins on the date the lender makes the first disbursement of the PPP loan to the borrower. The lender must make the first disbursement of the loan no later than ten calendar days from the date of loan approval.[5]

21. **Question:** Do lenders need a separate SBA Authorization document to issue PPP loans?

   **Answer:** No.  A lender does not need a separate SBA Authorization for SBA to guarantee a PPP loan.  However, lenders must have executed SBA Form 2484 (the

---

remain paid and employed.  Further, because the reference period for determining a borrower's maximum loan amount will largely or entirely precede the period from February 15, 2020, to June 30, 2020, and the period during which borrowers will be subject to the restrictions on allowable uses of the loans may extend beyond that period, for purposes of the determination of allowable uses of loans and the amount of loan forgiveness, this statutory exclusion will apply with respect to such taxes imposed or withheld at any time, not only during such period.

[4] Questions 2 – 18 published April 6, 2020.
[5] Questions 19 – 20 published April 8, 2020.

Exhibit C
Page 0039

As of May 13, 2020

Lender Application Form for the Paycheck Protection Program)[6] to issue PPP loans and receive a loan number for each originated PPP loan. Lenders may include in their promissory notes for PPP loans any terms and conditions, including relating to amortization and disclosure, that are not inconsistent with Sections 1102 and 1106 of the CARES Act, the PPP Interim Final Rules and guidance, and SBA Form 2484.

22. **Question:**  I am a non-bank lender that meets all applicable criteria of the PPP Interim Final Rule.  Will I be automatically enrolled as a PPP lender?  What criteria will SBA and the Treasury Department use to assess whether to approve my application to participate as a PPP lender?

**Answer:**  We encourage lenders that are not currently 7(a) lenders to apply in order to increase the scope of PPP lending options and the speed with which PPP loans can be disbursed to help small businesses across America.  We recognize that financial technology solutions can promote efficiency and financial inclusion in implementing the PPP.  Applicants should submit SBA Form 3507 and the relevant attachments to NFRLApplicationForPPP@sba.gov.  Submission of the SBA Form 3507 does not result in automatic enrollment in the PPP.  SBA and the Treasury Department will evaluate each application from a non-bank or non-insured depository institution lender and determine whether the applicant has the necessary qualifications to process, close, disburse, and service PPP loans made with SBA's guarantee.  SBA may request additional information from the applicant before making a determination.

23. **Question:**  How do the $10 million cap and affiliation rules work for franchises?

**Answer:**  If a franchise brand is listed on the SBA Franchise Directory, each of its franchisees that meets the applicable size standard can apply for a PPP loan.  (The franchisor does not apply on behalf of its franchisees.)  The $10 million cap on PPP loans is a limit per franchisee entity, and each franchisee is limited to one PPP loan.

Franchise brands that have been denied listing on the Directory because of affiliation between franchisor and franchisee may request listing to receive PPP loans.  SBA will not apply affiliation rules to a franchise brand requesting listing on the Directory to participate in the PPP, but SBA will confirm that the brand is otherwise eligible for listing on the Directory.

24. **Question:**  How do the $10 million cap and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72)?

**Answer:**  Under the CARES Act, any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a PPP loan.

---

[6] This requirement is satisfied by a lender when the lender completes the process of submitting a loan through the E-Tran system; no transmission or retention of a physical copy of Form 2484 is required.

Exhibit C
Page 0040

As of May 13, 2020

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees. As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN.

The $10 million maximum loan amount limitation applies to each eligible business entity, because individual business entities cannot apply for more than one loan. The following examples illustrate how these principles apply.

Example 1. Company X directly owns multiple restaurants and has no affiliates.
- Company X may apply for a PPP loan if it employs 500 or fewer employees per location (including at its headquarters), even if the total number of employees employed across all locations is over 500.

Example 2. Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y and Company Z each own a single restaurant with 500 or fewer employees.
- Company Y and Company Z can each apply for a separate PPP loan, because each has 500 or fewer employees. The affiliation rules do not apply, because Company Y and Company Z each has 500 or fewer employees and is in the food services business (with a NAICS code beginning with 72).

Example 3. Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.
- Company Y is eligible for a PPP loan because it has 500 or fewer employees. The affiliation rules do not apply to Company Y, because it has 500 or fewer employees and is in the food services business (with a NAICS code beginning with 72).
- The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a PPP loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards," as explained in FAQ #2.

25. **Question:** Does the information lenders are required to collect from PPP applicants regarding every owner who has a 20% or greater ownership stake in the applicant business (i.e., owner name, title, ownership %, TIN, and address) satisfy a lender's obligation to collect beneficial ownership information (which has a 25% ownership threshold) under the Bank Secrecy Act?

Exhibit C
Page 0041

As of May 13, 2020

**Answer:**

<u>For lenders with existing customers</u>:  With respect to collecting beneficial ownership information for owners holding a 20% or greater ownership interest, if the PPP loan is being made to an existing customer and the lender previously verified the necessary information, the lender does not need to re-verify the information.  Furthermore, if federally insured depository institutions and federally insured credit unions eligible to participate in the PPP program have not yet collected such beneficial ownership information on existing customers, such institutions do not need to collect and verify beneficial ownership information for those customers applying for new PPP loans, unless otherwise indicated by the lender's risk-based approach to Bank Secrecy Act (BSA) compliance.

<u>For lenders with new customers</u>:  For new customers, the lender's collection of the following information from all natural persons with a 20% or greater ownership stake in the applicant business will be deemed to satisfy applicable BSA requirements and FinCEN regulations governing the collection of beneficial ownership information:  owner name, title, ownership %, TIN, address, and date of birth.  If any ownership interest of 20% or greater in the applicant business belongs to a business or other legal entity, lenders will need to collect appropriate beneficial ownership information for that entity.  If you have questions about requirements related to beneficial ownership, go to https://www.fincen.gov/resources/statutes-and-regulations/cdd-final-rule.  Decisions regarding further verification of beneficial ownership information collected from new customers should be made pursuant to the lender's risk-based approach to BSA compliance.[7]

26. **Question:**  SBA regulations require approval by SBA's Standards of Conduct Committee (SCC) for SBA Assistance, other than disaster assistance, to an entity, if its sole proprietor, partner, officer, director, or stockholder with a 10 percent or more interest is: a current SBA employee; a Member of Congress; an appointed official or employee of the legislative or judicial branch; a member or employee of an SBA Advisory Council or SCORE volunteer; or a household member of any of the preceding individuals.  Do these entities need the approval of the SCC in order to be eligible for a PPP loan?

    **Answer:**  The SCC has authorized a blanket approval for PPP loans to such entities so that further action by the SCC is not necessary in the PPP program.

27. **Question:**  SBA regulations require a written statement of no objection by the pertinent Department or military service before it provides any SBA Assistance, other than disaster loans, to an entity, if its sole proprietor, partner, officer, director, or stockholder with a 10 percent or more interest, or if a household member of any of the preceding individuals, is an employee of another Government Department or Agency having a grade of at least GS-13 or its equivalent.  Does this requirement apply to PPP loans?

---

[7] Questions 21 – 25 published April 13, 2020.

Exhibit C
Page 0042

As of May 13, 2020

**Answer:** No. The SCC has determined that a written statement of no objection is not required from another Government Department or Agency for PPP loans.

28. **Question:** Is a lender permitted to submit a PPP loan application to SBA through E-Tran before the lender has fulfilled its responsibility to review the required borrower documentation and calculation of payroll costs?

**Answer:** No. Before a lender submits a PPP loan through E-Tran, the lender must have collected the information and certifications contained in the Borrower Application Form and the lender must have fulfilled its obligations set forth in paragraphs 3.b.(i)-(iii) of the PPP Interim Final Rule. Please refer to the Interim Final Rule and FAQ #1 for more information on the lender's responsibility regarding confirmation of payroll costs.

Lenders who did not understand that these steps are required before submission to E-Tran need not withdraw applications submitted to E-Tran before April 14, 2020, but must fulfill lender responsibilities with respect to those applications as soon as practicable and no later than loan closing.[8]

29. **Question:** Can lenders use scanned copies of documents or E-signatures or E-consents permitted by the E-sign Act?

**Answer:** Yes. All PPP lenders may accept scanned copies of signed loan applications and documents containing the information and certifications required by SBA Form 2483 and the promissory note used for the PPP loan. Additionally, lenders may also accept any form of E-consent or E-signature that complies with the requirements of the Electronic Signatures in Global and National Commerce Act (P.L. 106-229).

If electronic signatures are not feasible, when obtaining a wet ink signature without in-person contact, lenders should take appropriate steps to ensure the proper party has executed the document.

This guidance does not supersede signature requirements imposed by other applicable law, including by the lender's primary federal regulator.[9]

30. **Question:** Can a lender sell a PPP loan into the secondary market?

**Answer:** Yes. A PPP loan may be sold into the secondary market at any time after the loan is fully disbursed. A secondary market sale of a PPP loan does not require SBA approval. A PPP loan sold into the secondary market is 100% SBA guaranteed. A PPP loan may be sold on the secondary market at a premium or a discount to par value.[10]

---

[8] Questions 26 – 28 published April 14, 2020.
[9] Question 29 published April 15, 2020.
[10] Question 30 published April 17, 2020.

Exhibit C
Page 0043

As of May 13, 2020

31. **Question:**  Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?

   **Answer:**  In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application.  Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business.  For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

   Lenders may rely on a borrower's certification regarding the necessity of the loan request.  Any borrower that applied for a PPP loan prior to the issuance of this guidance and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.[11]

32. **Question:**  Does the cost of a housing stipend or allowance provided to an employee as part of compensation count toward payroll costs?

   **Answer:**  Yes. Payroll costs includes all cash compensation paid to employees, subject to the $100,000 annual compensation per employee limitation.

33. **Question:**  Is there existing guidance to help PPP applicants and lenders determine whether an individual employee's principal place of residence is in the United States?

   **Answer:**  PPP applicants and lenders may consider IRS regulations (26 CFR § 1.121-1(b)(2)) when determining whether an individual employee's principal place of residence is in the United States.

34. **Question:**  Are agricultural producers, farmers, and ranchers eligible for PPP loans?

   **Answer:**  Yes.  Agricultural producers, farmers, and ranchers are eligible for PPP loans if: (i) the business has 500 or fewer employees, or (ii) the business fits within the revenue-based sized standard, which is average annual receipts of $1 million.

   Additionally, agricultural producers, farmers, and ranchers can qualify for PPP loans as a small business concern if their business meets SBA's "alternative size standard."  The

---

[11] Question 31 published April 23, 2020.

Exhibit C
Page 0044

As of May 13, 2020

"alternative size standard" is currently: (1) maximum net worth of the business is not more than $15 million, and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

For all of these criteria, the applicant must include its affiliates in its calculations.  Link to Applicable Affiliation Rules for the PPP.

35. **Question:**  Are agricultural and other forms of cooperatives eligible to receive PPP loans?

**Answer:**  As long as other PPP eligibility requirements are met, small agricultural cooperatives and other cooperatives may receive PPP loans.[12]

36. **Question:**  To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?

**Answer:**  For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis."  A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold.  For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees.

By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "full-time equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.[13]

37. **Question:**  Do businesses owned by private companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?

**Answer:**  See response to FAQ #31.[14]

38. **Question:**  Section 1102 of the CARES Act provides that PPP loans are available only to applicants that were "in operation on February 15, 2020."  Is a business that was in operation on February 15, 2020 but had a change in ownership after February 15, 2020 eligible for a PPP loan?

**Answer:**  Yes.  As long as the business was in operation on February 15, 2020, if it meets the other eligibility criteria, the business is eligible to apply for a PPP loan regardless of the change in ownership.  In addition, where there is a change in ownership effectuated through a purchase of substantially all assets of a business that was in operation on

---

[12] Questions 32 – 35 published April 24, 2020.
[13] Questions 36 published April 26, 2020.
[14] Question 37 published April 28, 2020.

As of May 13, 2020

February 15, the business acquiring the assets will be eligible to apply for a PPP loan even if the change in ownership results in the assignment of a new tax ID number and even if the acquiring business was not in operation until after February 15, 2020. If the acquiring business has maintained the operations of the pre-sale business, the acquiring business may rely on the historic payroll costs and headcount of the pre-sale business for the purposes of its PPP application, except where the pre-sale business had applied for and received a PPP loan. The Administrator, in consultation with the Secretary, has determined that the requirement that a business "was in operation on February 15, 2020" should be applied based on the economic realities of the business's operations.

39. **Question:** Will SBA review individual PPP loan files?

    **Answer:** Yes. In FAQ #31, SBA reminded all borrowers of an important certification required to obtain a PPP loan. To further ensure PPP loans are limited to eligible borrowers in need, the SBA has decided, in consultation with the Department of the Treasury, that it will review all loans in excess of $2 million, in addition to other loans as appropriate, following the lender's submission of the borrower's loan forgiveness application. Additional guidance implementing this procedure will be forthcoming.

    The outcome of SBA's review of loan files will not affect SBA's guarantee of any loan for which the lender complied with the lender obligations set forth in paragraphs III.3.b(i)-(iii) of the Paycheck Protection Program Rule (April 2, 2020) and further explained in FAQ #1.[15]

40. **Question:** Will a borrower's PPP loan forgiveness amount (pursuant to section 1106 of the CARES Act and SBA's implementing rules and guidance) be reduced if the borrower laid off an employee, offered to rehire the same employee, but the employee declined the offer?

    **Answer:** No. As an exercise of the Administrator's and the Secretary's authority under Section 1106(d)(6) of the CARES Act to prescribe regulations granting de minimis exemptions from the Act's limits on loan forgiveness, SBA and Treasury intend to issue an interim final rule excluding laid-off employees whom the borrower offered to rehire (for the same salary/wages and same number of hours) from the CARES Act's loan forgiveness reduction calculation. The interim final rule will specify that, to qualify for this exception, the borrower must have made a good faith, written offer of rehire, and the employee's rejection of that offer must be documented by the borrower. Employees and employers should be aware that employees who reject offers of re-employment may forfeit eligibility for continued unemployment compensation.

41. **Question:** Can a seasonal employer that elects to use a 12-week period between May 1, 2019 and September 15, 2019 to calculate its maximum PPP loan amount under the interim final rule issued by Treasury on April 27, 2020, make all the required certifications on the Borrower Application Form?

---

[15] Questions 38 – 39 published April 29, 2020.

Exhibit C
Page 0046

As of May 13, 2020

**Answer:** Yes. The Borrower Application Form requires applicants to certify that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program." On April 27, 2020, Treasury issued an interim final rule allowing seasonal borrowers to use an alternative base period for purposes of calculating the loan amount for which they are eligible under the PPP. An applicant that is otherwise in compliance with applicable SBA requirements, and that complies with Treasury's interim final rule on seasonal workers, will be deemed eligible for a PPP loan under SBA rules. Instead of following the instructions on page 3 of the Borrower Application Form for the time period for calculating average monthly payroll for seasonal businesses, an applicant may elect to use the time period in Treasury's interim final rule on seasonal workers.

42. **Question:** Do nonprofit hospitals exempt from taxation under section 115 of the Internal Revenue Code qualify as "nonprofit organizations" under section 1102 of the CARES Act?

**Answer:** Section 1102 of the CARES Act defines the term "nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code." The Administrator, in consultation with the Secretary of the Treasury, understands that nonprofit hospitals exempt from taxation under section 115 of the Internal Revenue Code are unique in that many such hospitals may meet the description set forth in section 501(c)(3) of the Internal Revenue Code to qualify for tax exemption under section 501(a), but have not sought to be recognized by the IRS as such because they are otherwise fully tax-exempt under a different provision of the Internal Revenue Code.

Accordingly, the Administrator will treat a nonprofit hospital exempt from taxation under section 115 of the Internal Revenue Code as meeting the definition of "nonprofit organization" under section 1102 of the CARES Act if the hospital reasonably determines, in a written record maintained by the hospital, that it is an organization described in section 501(c)(3) of the Internal Revenue Code and is therefore within a category of organization that is exempt from taxation under section 501(a).[16] The hospital's certification of eligibility on the Borrower Application Form cannot be made without this determination. This approach helps accomplish the statutory purpose of ensuring that a broad range of borrowers, including entities that are helping to lead the medical response to the ongoing pandemic, can benefit from the loans provided under the PPP.

---

[16] This determination need not account for the ancillary conditions set forth in section 501(r) of the Internal Revenue Code and elsewhere associated with securing the tax exemption under that section. Section 501(r) states that a hospital organization shall not be treated as described in section 501(c)(3) unless it meets certain community health and other requirements. However, section 1102 of the CARES Act defines the term "nonprofit organization" solely by reference to section 501(c)(3), and section 501(r) does not amend section 501(c)(3). Therefore, for purposes of the PPP, the requirements of section 501(r) do not apply to the determination of whether an organization is "described in section 501(c)(3)."

Exhibit C
Page 0047

As of May 13, 2020

This guidance is solely for purposes of qualification as a "nonprofit organization" under section 1102 of the CARES Act and related purposes of the CARES Act, and does not have any consequences for federal tax law purposes. Nonprofit hospitals should also review all other applicable eligibility criteria, including the *Interim Final Rules on Promissory Notes, Authorizations, Affiliation, and Eligibility* (April 28, 2020) regarding an important limitation on ownership by state or local governments. 85 FR 23450, 23451.[17]

43. **Question:** FAQ #31 reminded borrowers to review carefully the required certification on the Borrower Application Form that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." SBA guidance and regulations provide that any borrower who applied for a PPP loan prior to April 24, 2020 and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith. Is it possible for a borrower to obtain an extension of the May 7, 2020 repayment date?

   **Answer:** SBA is extending the repayment date for this safe harbor to May 14, 2020. Borrowers do not need to apply for this extension. This extension will be promptly implemented through a revision to the SBA's interim final rule providing the safe harbor. SBA intends to provide additional guidance on how it will review the certification prior to May 14, 2020.

44. **Question:** How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply with regard to counting the employees of foreign and U.S. affiliates?

   **Answer:** For purposes of the PPP's 500 or fewer employee size standard, an applicant must count all of its employees and the employees of its U.S and foreign affiliates, absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6). Business concerns seeking to qualify as a "small business concern" under section 3 of the Small Business Act (15 U.S.C. 632) on the basis of the employee-based size standard must do the same.[18]

45. **Question:** Is an employer that repays its PPP loan by the safe harbor deadline (May 14, 2020) eligible for the Employee Retention Credit?

   **Answer:** Yes. An employer that applied for a PPP loan, received payment, and repays the loan by the safe harbor deadline (May 14, 2020) will be treated as though the employer had not received a covered loan under the PPP for purposes of the Employee Retention Credit. Therefore, the employer will be eligible for the credit if the employer is otherwise an eligible employer for purposes of the credit.[19]

---

[17] Questions 40 – 42 published May 3, 2020.
[18] Questions 43 – 44 published May 5, 2020.
[19] Question 45 published May 6, 2020.

Exhibit C
Page 0048

As of May 13, 2020

46. **Question:**  How will SBA review borrowers' required good-faith certification concerning the necessity of their loan request?

**Answer:**  When submitting a PPP application, all borrowers must certify in good faith that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  SBA, in consultation with the Department of the Treasury, has determined that the following safe harbor will apply to SBA's review of PPP loans with respect to this issue:  Any borrower that, together with its affiliates,[20] received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith.

SBA has determined that this safe harbor is appropriate because borrowers with loans below this threshold are generally less likely to have had access to adequate sources of liquidity in the current economic environment than borrowers that obtained larger loans.  This safe harbor will also promote economic certainty as PPP borrowers with more limited resources endeavor to retain and rehire employees.  In addition, given the large volume of PPP loans, this approach will enable SBA to conserve its finite audit resources and focus its reviews on larger loans, where the compliance effort may yield higher returns.

Importantly, borrowers with loans greater than $2 million that do not satisfy this safe harbor may still have an adequate basis for making the required good-faith certification, based on their individual circumstances in light of the language of the certification and SBA guidance.  SBA has previously stated that all PPP loans in excess of $2 million, and other PPP loans as appropriate, will be subject to review by SBA for compliance with program requirements set forth in the PPP Interim Final Rules and in the Borrower Application Form.  If SBA determines in the course of its review that a borrower lacked an adequate basis for the required certification concerning the necessity of the loan request, SBA will seek repayment of the outstanding PPP loan balance and will inform the lender that the borrower is not eligible for loan forgiveness.  If the borrower repays the loan after receiving notification from SBA, SBA will not pursue administrative enforcement or referrals to other agencies based on its determination with respect to the certification concerning necessity of the loan request.  SBA's determination concerning the certification regarding the necessity of the loan request will not affect SBA's loan guarantee.

47. **Question:**  An SBA interim final rule posted on May 8, 2020 provided that any borrower who applied for a PPP loan and repays the loan in full by May 14, 2020 will be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith.  Is it possible for a borrower to obtain an extension of the May 14, 2020 repayment date?

---

[20] For purposes of this safe harbor, a borrower must include its affiliates to the extent required under the interim final rule on affiliates, 85 FR 20817 (April 15, 2020).

EX A P16

Exhibit C
Page 0049

As of May 13, 2020

**Answer:**  Yes, SBA is extending the repayment date for this safe harbor to May 18, 2020, to give borrowers an opportunity to review and consider FAQ #46.  Borrowers do not need to apply for this extension.  This extension will be promptly implemented through a revision to the SBA's interim final rule providing the safe harbor.[21]

---

[21] Questions 46 – 47 published May 13, 2020.

EX A P17

Exhibit C
Page 0050



Office of Hearings and Appeals
U.S. Small Business Administration

**Dear XXXXXX:**

Thank you for contacting the Office of Hearings and Appeals (OHA).

If you received a bill for a Small Business Administration (SBA) Paycheck Protection Program (PPP) loan or COVID-19 Economic Injury Disaster Loan (EIDL) that you never applied for, an identity thief may have used your personal information to acquire the loan. Please take the following steps to report this incident:

**Step 1. Report the identity theft to the Federal Trade Commission at IdentityTheft.gov.**

- You will get an FTC Identity Theft report and a personal recovery plan.
- Save a copy of your FTC Identity Theft Report. You will need to submit it to SBA.
- Follow the personal recovery plan to stop further misuse of your personal information and help repair the damage the identity theft caused.

**Step 2. Visit the SBA's website at sba.gov/idtheft.**

- Follow the steps to report the identity theft to SBA. This is required to start the SBA review process.

**Step 3. If the identity theft involved a PPP loan and you know the private lender that issued the loan, contact the lender too.**

- Explain an identity thief used your personal information to get the PPP loan without your knowledge or authorization. Tell the lender the loan is fraudulent.
- Ask the lender to release you from the loan and to take all the steps needed to remove information about the loan from your credit files.
- Ask the lender to send you a letter explaining the actions it has taken.
- Write down who you spoke with and when. You may need to contact the lender again.
- Know the lender may require a copy of your FTC Identity Theft Report and other documents. The sample letter at the following link can help you get things started: **https://www.identitytheft.gov/Sample-Letters/small-business-administration**.

For questions about COVID-19 EIDL identity theft, contact SBA COVID-19 EIDL Customer Service at 833-853-5638 or by email at **IDTRecords@sba.gov**.

If you have any further questions for OHA, email **ohapppinquiries@sba.gov**.

EX B P1

Exhibit C
Page 0051

DocuSign Envelope ID: 7A9D62C0-D0EE-4663-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

OMB Control No.: 3245-0417
Expiration Date: 9/30/2021

| Check One: | ☒ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐ Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Blue Pacific Engineering & Construction Co | 2003-09-18 |

| Business Legal Name | | NAICS Code |
|---|---|---|
| Shahram Elihu | | 237310 |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 7330 Opportunity Rd | 84-1650613 | 619-788-9428 |
| San Diego          California  92111 | Primary Contact | Email Address |
| | Shahram  Elihu | selihu@bluepacificeng.com |

| Average Monthly Payroll: | 368200.00 | x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000): | 920500.00 | Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies): | 65 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☒ Payroll Costs<br>Payroll Costs | ☐ Rent / Mortgage Interest | ☐ Utilities | ☐ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | ☐ Other (explain) |

| PPP First Draw SBA Loan Number: | 3533847202 |
|---|---|

| Reduction in Gross Receipts of at Least 25% (Applicants for loans of $150,000 or less may leave blank but must provide upon or before seeking loan forgiveness or upon SBA request): | 2020 Quarter (e.g., 2Q 2020): | Q3 2020 | Reference Quarter (e.g., 2Q 2019): | Q3 2019 |
|---|---|---|---|---|
| | Gross Receipts: | 3406648.11 | Gross Receipts: | 4806987.86 |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Shahram          Elihu | Owner | 100% | 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 | 327 El Pedregal Dr<br>Solana Beach          California 92075 |

**PPP Applicant Demographic Information (Optional)**

Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.

| Principal Name | Principal Position |
|---|---|
| Shahram Elihu | Owner |

| | Select Response Below: |
|---|---|
| Veteran | ☐ Non-Veteran; ☐ Veteran; ☐ Service-Disabled Veteran; ☐ Spouse of Veteran; ☐ Not Disclosed<br>Non-Veteran |
| Gender | ☐ Male; ☐ Female; ☐ Not Disclosed<br>Male |
| Race (more than 1 may be selected) | ☐ American Indian or Alaska Native; ☐ Asian; ☐ Black or African-American;<br>☐ Native Hawaiian or Pacific Islander; ☐ White; ☐ Not Disclosed    Not Disclosed |
| Ethnicity | ☐ Hispanic or Latino; ☐ Not Hispanic or Latino; ☐ Not Disclosed<br>Not Disclosed |

Exhibit D
Page 0052

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | | X |
| 4. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br>Initial here to confirm your response to question 4 → | | X |
| 5. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 5 → | | X |
| 6. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | X | |
| 7. Is the Applicant a franchise? | | X |
| 8. Is the franchise listed in SBA's Franchise Directory?  If yes, enter SBA Franchise Identifier Code here: | | |



SBA Form 2483-SD (6/221)

543 of 726

Exhibit D
Page 0053

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) employs no more than 300 employees; (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 300 employees per location; or (5) if a 501(c)(3) organization, an eligible 501(c)(6) organization, other eligible 501(c) organization, eligible destination marketing organization, employs no more than 300 employees per physical location.

- I will comply, whenever applicable, with the civil rights and other limitations in this form.

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.

- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.

- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

*SE* — The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

*SE* — Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

*SE* — The Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

*SE* — The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses.

*SE* — The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

*SE* — I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

*SE* — The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan.

Exhibit D
Page 0054

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

 The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

The Applicant is not required to submit a registration statement under section 2 of the Foreign Agents Registration Act of 1938 (22 U.S.C. 612).

The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Shahram Elihu_
_____
Signature of Authorized Representative of Applicant

Shahram Elihu
_____
Print Name

3/24/2021
_____
Date

Sole Proprietorship
_____
Title

Exhibit D
Page 0055

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-SD-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

## Instructions for completing this form:

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses without 12 months of payroll costs but that were in operation on February 15, 2020, average monthly payroll may be calculated based on the number of months in which payroll costs were incurred, excluding costs over $100,000 on an annualized basis for each employee, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-SD-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture. For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. In determining whether the Applicant experienced at least a 25% reduction in gross receipts, for loans above $150,000, the Applicant must identify the 2020 quarter meeting this requirement, identify the reference quarter, and state the gross receipts amounts for both quarters, as well as provide supporting documentation. For loans of $150,000 and below, these fields are not required and the Applicant only must certify that the Applicant has met the 25% gross receipts reduction at the time of application; however, upon or before seeking loan forgiveness (or upon SBA request) the Applicant must provide documentation that identifies the 2020 quarter meeting this requirement, identifies the reference quarter, states the gross receipts amounts for both quarters, and supports the amounts provided. For all loans, the appropriate reference quarter depends on how long the Applicant has been in operation:

- For all Applicants other than those satisfying the conditions set forth below, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the same quarter of 2019. Alternatively, Applicants may compare annual gross receipts in 2020 with annual gross receipts in 2019; Applicants choosing to use annual gross receipts must enter "Annual" in the 2020 Quarter and Reference Quarter fields and, as required documentation, must submit copies of annual tax forms substantiating the annual gross receipts reduction.

- For Applicants not in business during the first and second quarters of 2019 but in operation during the third and fourth quarters of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than either the third or fourth quarters of 2019.

- For Applicants not in business during the first, second, and third quarters of 2019 but in operation during the fourth quarter of 2019, Applicants must demonstrate that gross receipts in any quarter of 2020 were at least 25% lower than the fourth quarter of 2019.

- For Applicants not in business during 2019 but in operation on February 15, 2020, Applicants must demonstrate that gross receipts in the second, third, or fourth quarter of 2020 were at least 25% lower than the first quarter of 2020.

Gross receipts includes all revenue in whatever form received or accrued (in accordance with the Applicant's accounting method) from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" and excludes net capital gains or losses as these terms are defined and reported on IRS tax return forms. Gross receipts do not include the following: taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from gross receipts. Gross receipts of an Applicant must be aggregated with gross receipts of its affiliates. For a nonprofit organization, veterans

Exhibit D
Page 0056

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC9E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

organization, nonprofit news organization, 501(c)(6) organization, and destination marketing organization, gross receipts has the meaning in section 6033 of the Internal Revenue Code of 1986.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). For NAICS 72, eligible news organizations, 501(c)(3) organizations, eligible 501(c)(6) organizations, other eligible 501(c) organizations, eligible destination marketing organizations, or Internet-only news or periodical publishers assigned NAICS code 519130, applicants may not exceed 300 employees per physical location. Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable. For purposes of calculating an Applicant's maximum payroll costs, an Applicant may multiply its average monthly payroll costs by 3.5 only if the Applicant is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 as its business activity code on its most recent IRS income tax return.

All parties listed below are considered owners of the Applicant:

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

For purposes of reporting (optional) demographic information:
1. **Purpose.** Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description.** This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal.** The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name.** Insert the full name of the Principal.
5. **Principal Position.** Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act –** You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a) –** Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information –** Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

Exhibit D
Page 0057

DocuSign Envelope ID: 7A9D82C0-D0EE-4563-B8F1-8CBEC0E09998

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.



Exhibit D
Page 0058

DocuSign Envelope ID: 20F170CE-0F02-4DB6-B104-9A8FD9A44988

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

OMB Control No.: 3245-0407
Expiration Date: 01/31/2022



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

| Business Legal Name ("Borrower") | | DBA or Tradename, if applicable | |
|---|---|---|---|
| Shahram Elihu | | Blue Pacific Engineering & Construction Co | |
| Business Address | NAICS Code | Business TIN (EIN, SSN, ITIN) | Business Phone |
| 7330 Opportunity Rd,San Diego,California,92111,USA | 237310 | 84-1650613 | (19 )-78 8-94 |
| | | Primary Contact | E-mail Address |
| | | Shahram Elihu | selihu@bluepacificeng.com |

☐ First Draw PPP Loan  ☒ Second Draw PPP Loan  (check one)

SBA PPP Loan Number: 8685148703      Lender PPP Loan Number: 0001400000288515

PPP Loan Amount: 920500.00      PPP Loan Disbursement Date: 2021-04-08

Amount of PPP Loan Increase (if applicable): _____      Date of PPP Loan Increase (if applicable): _____

Employees at Time of Loan Application: 65      Employees at Time of Forgiveness Application: 60.00

Covered Period: 2021-04-08   to   2021-09-16

Forgiveness Amount Calculation:

Payroll and Nonpayroll Costs
Line 1. Payroll Costs:      2331146.87

Line 2. Business Mortgage Interest Payments:      .00

Line 3. Business Rent or Lease Payments:      30600.00

Line 4. Business Utility Payments:      .00

Line 5. Covered Operations Expenditures:      .00

Line 6. Covered Property Damage Costs:      .00

Line 7. Covered Supplier Costs:      .00

Line 8. Covered Worker Protection Expenditures:      .00

Potential Forgiveness Amounts
Line 9. Sum the amounts on lines 1 through 8:      2361746.87

Line 10. PPP Loan Amount:      920500.00

Line 11. Payroll Cost 60% Requirement (divide Line 1 by 0.60):      3885244.78

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11):      920500.00

DocuSign Envelope ID: 20F170CE-0F02-4DB6-B104-9A8FD9A44988

THIS IS A COPY
The Authoritative Copy of this record is DocuSign N3.3535662m.net
Expiration Date: 01/31/2022



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

**PPP Borrower Demographic Information (Optional)**

**Instructions**

1.  **Purpose.** Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2.  **Description.** This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3.  **Definition of Principal.** The term "Principal" means:
    *   For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
    *   For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
    *   For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
    *   For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
    *   Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
    *   Any trustor (if the Borrower is owned by a trust).
    *   For a nonprofit organization, the officers and directors of the Borrower.
4.  **Principal Name.** Insert the full name of the Principal.
5.  **Principal Position.** Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Principal Position | |
|---|---|---|---|
| Shahram Elihu | | President | |
| | Select Response Below: | | |
| Veteran | ☐Non-Veteran;☐ Veteran;☐Service-Disabled Veteran;☐Spouse of Veteran;☒Not Disclosed | | |
| Gender | ☐Male;☐Female;☒Not Disclosed | | |
| Race (more than 1 may be selected) | ☐American Indian or Alaska Native;☐Asian;☐Black or African-American;☐Native Hawaiian or Pacific Islander;☐White;☒Not Disclosed | | |
| Ethnicity | ☐Hispanic or Latino;☐Not Hispanic or Latino;☒Not Disclosed | | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**
The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one. The terms "payroll" and "payroll costs" as used in the below certifications include proprietor expenses (business expenses plus owner compensation) for Borrowers that applied for loans using SBA Form 2483-C or 2483-SD-C.

[SE]   The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):
  *   was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
  *   includes payroll costs equal to at least 60% of the forgiveness amount;  and
  *   for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

[SE]   I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

[SE]   The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period.  For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

[SE]   The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

DocuSign Envelope ID: 20F170CE-0F02-4DB6-B104-9A8FD9A4498B

THIS IS A COPY
The Authoritative Copy of this record is held at na-cv1.docusign.net
OMB Control No: 3245-0407
Expiration Date: 01/31/2022

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

 I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.

 If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.

 The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

 The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

 I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:

X  The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020, and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

_____ The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

_Shahram Elihu_ _____     6/8/2022 _____
Signature of Authorized Representative of Borrower            Date

Shahram Elihu _____     President _____
Print Name                                                   Title

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 20 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.